UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

GARY SPARAGO,

                                        Plaintiff,

           -against-

BEAVER MOUNTAIN LOG HOMES, INC.,

                                  Defendant.

_____

**MEMORANDUM OF
LAW IN SUPPORT OF
MOTION TO DISMISS
AMENDED COMPLAINT**

Case No. 7:20-cv-00276

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ..........................................................................................................I

TABLE OF AUTHORITIES....................................................................................................II

PRELIMINARY STATEMENT .............................................................................................1

STATEMENT OF FACTS .......................................................................................................1

DISCUSSION ...........................................................................................................................3

    I.   Sparago's General Business Law § 349 Claim should Be dismissed ...............................4

         A.  The Amended Complaint Does Not Allege any Representation or Omission Likely to Mislead a Reasonable Consumer Acting Reasonably under the Circumstances ..........5

         B.  Claims under GBL§ 349 Cannot Set Forth Deception as Both Act and Injury ...........9

    II.  Sparago Fails to State a Cause of Action Both for Negligence (Second Cause of Action) and for Negligent Misrepresentation (Third Cause of Action) ......................12

         A.  Third Cause of Action: Negligent Misrepresentation................................................12

         B.  Second Cause of Action: Negligence .......................................................................18

CONCLUSION.......................................................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*105 Mt. Kisco Assocs. LLC*, 2019 WL 6998008, at \*14 ............................................................13

*Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 99 (S.D.N.Y. 2004)............................................................................................................................................19

*Amalfitano v NBTY Inc.*, 128 A.D.3d 743, 745–46 (2d Dep't 2015 ......................................5, 8, 9

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012)............... 12, 13, 16

*ATSI Commc'ns Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007)..............................3

*AXA Versicherung AG v. New Hampshire, Ins. Co.*, 391 F. App'x 25, 30 (2d Cir. 2010) ............7

*Aylaian v. Town of Huntington*, 459 F. App'x 25, 27 (2d Cir. 2012)............................................7

*B&M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010)....17

*Bailey v. New York Law Sch.*, No. 16 CIV. 4283 (ER), 2019 WL 4640230, at \*7 (S.D.N.Y. Sept. 24, 2019)...................................................................................................................................5

*Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 158 (2d Cir. 1995)..............................................................................................................................13

*Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007)...........................................................9

*Beneficial Homeowner Serv. Corp. v. Williams*, 113 A.D.3d 713, 714–15 (2d Dep't 2014) ........8

*BNP Paribas Mortg. Corp.*, 949 F. Supp.2d 511–12..................................................................19

*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).............................................4

*Braynina v. TJX Cos.*, No. 15 CIV 5897 (KPF), 2016 WL 5374134, at \*10 (S.D.N.Y. Sept. 26, 2016).....................................................................................................................................9

*Broder v. MBNA Corp.*, 281 A.D.2d 369 (1st Dep't 2001).........................................................6

*Broder*, 281 A.D.2d at 371 ...........................................................................................................8

*Chufen Chen v. Dunkin' Brands, Inc.*, __F.3d__, 2020 WL 1522826, at \*5–6 (2d Cir. 2020).......6

*Cohen v. Hertz Corp.*, No. 13 Civ. 1205(LTS)(AJP), 2013 WL 9450421, n.6 (S.D.N.Y. Nov. 26, 2013).....................................................................................................................................8

*Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007)..........................................6

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).....................................4

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490, 578 (2d Cir. 2014) ...................15

*Credit Alliance Corp.*, 65 N.Y.2d at 553, n. 11.........................................................................14

*Dallas Aerospace, Inc.*, 352 F.3d at 788 ...................................................................................15

*Danann Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959)...............................................................16

*Dimond v. Darden Rests., Inc.*, No. 13 Civ. 5244 (KPF), 2014 WL 3377105, at \*8 (S.D.N.Y. July 9, 2014) .......................................................................................................................6

*Eaves*, 785 F. Supp. 2d at 254–55. FRCP 9(b)..........................................................................21

*Espinal v. Melville Snow Contractors*, 98 N.Y.2d 136, 138 (2002)...........................................19

*Falkner v. Beer*, 43 F.3d 130, 135 (2d Cir. 2006) .......................................................................4

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 334 (S.D.N.Y. 2012), *aff'd* 712 F.3d 136 (2d Cir. 2013)....................................................................................................15

*Fed. Hous. Fin. Agency*, 858 F. Supp. 2d at 335 .......................................................................16

*Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) .......................................5, 8, 12

*Gale v. IBM Corp.*, 9 A.D.3d 446, 447 (2d Dep't. 2004) ...........................................................11

Generale Bank, New York Branch v. Wassel,
779 F. Supp. 310 (S.D.N.Y. 1991)...........................................................................................7

*Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 578 (2011) ...........15, 16

*Henneberry*, 415 F.Supp.2d at 452 ...................................................................................9, 15

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000) ........................9

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1996).....................4

*Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *2 (S.D.N.Y. Oct. 26, 2016) ............................................................................................................3

*J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007) ....................................13, 14

*Kimmell*, 89 N.Y.2d at 263 ...........................................................................................15, 20

*Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004) ............9

*Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 85 (2d Cir. 2013)......................................5, 8

*Lebowitz v. Dow Jones & Co.*, 847 F. Supp. 2d 599, 605 (S.D.N.Y. 2012) ...............................5

*Lum v. New Century Mtge. Corp.*, 19 A.D.3d 558, 559 (2d Dep't 2005)..................................8

*Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770(SAS), 2003 WL 1858153, at *4 (S.D.N.Y. Apr. 10, 2003) ...............................................................................................21

*Mandarin Trading Ltd.*, 16 N.Y.3d at 180 ...............................................................................14

*Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)..........................................................4

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 297 (1st Dep't 2011) ........15

*Meisel v. Grunberg*, 651 F. Supp. 2d 98, 108 (S.D.N.Y. 2009) .....................................................17

*Morgan Chase Bank*, 350 F. Supp. 2d at 400 ..........................................................................20

*Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987) .........................................................9

*N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 11 (2d Dep't 2012).......4, 11

*Naughright v. Weiss*, 826 F. Supp. 2d 676, 688 (S.D.N.Y. 2011)................................... 12, 20, 21

*Odyssey*, 85 F. Supp. 2d at 293 .......................................................................... 4, 13, 18

*Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 CIV. 8688 (WHP), 2002 WL 362794, at *15 (S.D.N.Y. Mar. 6, 2002)...........................................18

*Ossining Union Free Sch. Dist.*, 73 N.Y.2d at 425...................................................................14

*Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 483 (2000) ............................................14

*Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (2016)....................................19

*Pasternack v. Lab. Corp. of Am.*, No. 10 Civ. 4426(PGG), 2014 WL 4832299, at *14 (S.D.N.Y. Sept. 29, 2014) ................................................................................................................20

*Patriarch P'ners Agencies Servs., LLC v. Zohar CDO 2003-I, Ltd.*, 16 Civ. 4488 (VM), 2017 WL 1535385 at *5 (S.D.N.Y. Apr. 20, 2017) ............................................................................21

*Pension Ben. Guar. Corp.*, 712 F.3d at 717 ....................................................................3, 4

*PetEdge, Inc. v. Garg*, 234 F.Supp.3d 477, 496 (S.D.N.Y. 2017)......................................12, 21

*Pulka v. Edelman*, 40 N.Y.2d 781, 782 (1976).......................................................................19

*Ridge Seneca Plaza, LLC v. BP Prods. N.A.*, 546 F. App'x 44, 46 (2d Cir. 2013).....................14

*Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *citing* Fed. R. Civ. P. 9(b) ...................21

*Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 2d 194, 208 (E.D.N.Y. 2010)........................................................................................................................9

*Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 74 (1st Dep't 2000) ..........................................9

*Singh v. Queens Ledger Newspaper Grp.*, 2 A.D.3d 703, 704 (2d Dep't 2003)..........................10

*SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 546 B.R. 284, 301–02 (Bankr. S.D.N.Y. 2016) ........17

*Small*, 94 N.Y.2d at 56 .............................................................................................................9

*Sparago v. R&L Builders & Gen. Contracting Servs. LLC*, No. 7:19-cv-09152-CS (S.D.N.Y. filed October 2, 2019) ..............................................................................................................1

*Stewart v. Riviana Foods Inc.*, No. 16-CV-6157 (NSR), 2017 WL 4045952, at *9 (S.D.N.Y. Sept. 11, 2017) ..............................................................................................................6, 8

*Stutman v. Chem. Bank*, 95 N.Y.2d at 29......................................................................5

*Trepel v. Dippold*, No. 04 Civ. 8310(DLC), 2006 WL 3054336, at *6 (S.D.N.Y. Oct. 27, 2006)
    ............................................................................................................................15

*Ultrafem Inc.*, 91 F. Supp. 2d at 690-91...................................................................17

*Ultrafem Inc., Sec. Litig.*, 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000)...........................17

*Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 312 (S.D.N.Y. 2011).......................4

*Watts v. Jackson Hewitt Tax Serv.*, Inc., 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008)...................6

*Waverly Props., LLC v. KMG Waverly, LLC*, 824 F. Supp. 2d 547, 566–67 (S.D.N.Y. 2011) ......5

*White v. Guarente*, 43 N.Y.2d 356, 362–63 (1977)....................................................20

*Womack v. Capital Stack, LLC*, No. 1:18-CV-04192 (ALC), 2019 WL 4142740, at *12
    (S.D.N.Y. Aug. 30, 2019..................................................................................5

## PRELIMINARY STATEMENT

Defendant, Beaver Mountain Log Homes, Inc. ("Beaver Mountain"), respectfully submits this memorandum of law in support of its motion to dismiss the complaint of Gary Sparago ("Sparago") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."),

## STATEMENT OF FACTS

In his Amended Complaint, filed April 3, 2020 (ECF Doc. 10) ("Amended Complaint"), Sparago alleges that Beaver Mountain "manage[d] the entire design and construction project as the project manager"" for construction work done on his home located at 134 Seeman Road, Neversink, New York (Amended Complaint.., ¶¶ 15, 22; *see id.* at ¶¶ 29, 63). Sparago claims that, upon Beaver Mountain's recommendation, he hired "Robert Beechel and R&L Builders [(collectively "R&L")] in early 2018 to build the addition," and that "R&L . . . then completely botched the construction work at the Premises. . . ." (*Id.* at ¶¶ 18–20; ¶¶ 89–90).

The Amended Complaint alleges that "R&L . . . caused Mr. Sparago significant damage that Mr. Sparago is still trying to remediate," and that "R&L . . . failed to perform the work at the Premises in a good and workmanlike manner, failed to complete all of the work that was required under the contract, damaged other parts of the Premises that were not part of the scope of work, and failed to have adequate insurance coverage for their home improvement construction work." (*Id.* at 104). [1] Specifically, Sparago alleges that:

- In November 2017 and December 2017, "Beaver Mountain worked extensively with Mr. Sparago to coordinate and to manage the builder selection process–

---

[1] In a prior lawsuit, *Sparago v. R&L Builders & Gen. Contracting Servs. LLC*, No. 7:19-cv-09152-CS (S.D.N.Y. filed October 2, 2019) (defendants' default noted Jan. 20, 2020) ("R&L Complaint"), Sparago alleged breach of contract claims against R&L (and Beechel), but made no reference to Beaver Mountain's alleged involvement in the hiring process or oversight of "the entirety of Mr. Sparago's construction project. . . ." (Amended Complaint, ¶ 29; *see* R&L Complaint). And Sparago does not allege a breach of contract claim against Beaver Mountain, despite attaching the Purchase Agreement as Exhibit 1 to his Amended Complaint.

which ended with Beaver Mountain's favorable recommendation of Robert Beechel and his company R&L Builders." (Amended Complaint, ¶ 78).

- Beaver Mountain did not "share" its knowledge about R&L when asked "if it knew about any complaints. . . about [R&L,] or . . . any other problems with or concerns about [R&L]" (*Id.* ¶ 101; *see id.* ¶¶ 18, 92, 148, 163);

- He hired R&L "in early 2018" based on "Beaver Mountain's positive recommendation" and the "omission of material information concerning prior complaints" (*Id.* ¶ 18);

- Beaver Mountain gave R&L a "positive recommendation" and omitted "negative information" that Sparago requested (*Id.* ¶ 21);

- Beaver Mountain made certain representations in written promotional and holiday materials pertaining to its "expertise" and being a "project manager." (*Id.* ¶¶ 22 – 26);

- Beaver Mountain "facilitated" a meeting with Sparago and R&L in May 2019 (*Id.* ¶¶ 28–29);

- "Beaver Mountain oversaw Plaintiff's construction project at the Premises and is responsible for misleading Plaintiff with a positive recommendation of Robert Beechel" (*Id.* ¶ 30); and

- Beaver Mountain made a "site visit" in December 2019 and falsely led him to believe "the construction work was on track" (*Id.* ¶ 31).

Before Sparago hired R&L, he executed a Purchase Agreement with Beaver Mountain on December 16, 2017 ("Purchase Agreement"). A copy of the Purchase Agreement is attached as Exhibit 1 to the Amended Complaint ("Ex. 1"). Sparago signed right below the words: "This Purchase Agreement . . . *is subject to the Terms and Conditions stated on reverse side*. (Ex. 1, p. 1 (emphasis added)). The Purchase Agreement expressly states that Beaver Mountain assumed no liability for construction and disclaimed the causes of action that Sparago alleges:

1. …This Purchase Agreement by [Beaver Mountain] and the resulting acceptance by the Purchaser (customers required on the front hereof) is subject to the following Terms and conditions.

10. THE PURCHASER ACKNOWLEDGES THAT THE SELLER IS A SUPPLIER OF MATERIALS ONLY…***The Seller assumes no responsibility for erection or proper installation of materials***…***The Purchaser acknowledges that they are solely responsible for the selection of contractor(s).*** The Seller is not responsible for the quality of the contractor(s) work and the contractor(s) are not agent(s) or employee(s) of the Seller but is an independent contractor(s).

14. EXCEPT AS EXPRESSLY PROVIDED FOR IN THE BEAVER MOUNTAIN PROMISE AND LIMITED WARRANTY, SELLER DISCLAIMS ALL WARRANTIES, WHETHER STATUTORY, EXPRESSED OR IMPLIED, INCLUDING THE IMPLIED WARRANTIES OF FITNESS FOR USE AND MERCHANTABILITY, EXCEPT AS TO TITLE. *IN NO EVENT WILL EITHER PARTY BE LIABLE TO THE OTHER FOR…DIRECT OR INDIRECT, CONSEQUENTIAL, SPECIAL OR PUNITIVE LOSSES OR DAMAGES, HOWEVER CAUSED WHETHER AN ACTION FOR BREACH OF CONTRACT, STRICT LIABILITY, TORT OR OTHERWISE,* EVEN IF ADVISED WITH THE POSSIBILITY OF LOSS OR DAMAGES. IN NO EVENT WILL THE SELLER'S LIABILITY BE GREATER THAN THE TOTAL VALUE OF THE PRODUCTS GIVING RISE TO SUCH CLAIM.

(Ex. 1, p. 2 (capitalization in original; bold and italic emphasis added)).

For reasons set forth below, the Complaint should be dismissed in its entirety.

## DISCUSSION

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court generally "accept[s] all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-04697 (CM), 2016 WL 6459832, at *2 (S.D.N.Y. Oct. 26, 2016) (citations omitted). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through 'factual allegations sufficient to raise a right to relief above the speculative level.'" *ATSI Commc'ns Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) (citation omitted). Though a complaint "need not include detailed factual allegations, it must provide more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Pension Ben. Guar. Corp.*, 712 F.3d at 717 (citations omitted). A court "must take all of the factual allegations in the complaint as true" on a motion to dismiss, but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (citations omitted). Any complaint that "tenders naked assertions devoid of further factual enhancement" faces dismissal. *Izquierdo*, 2016 WL 6459832, at *2. As such, while "legal

3

conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Pension Ben. Guar. Corp.*, 712 F.3d at 717 (citations omitted). Furthermore, to satisfy Fed. R. Civ. P. 9(b), "a complaint 'must allege with some specificity the acts constituting fraud' . . . ; conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Odyssey*, 85 F. Supp. 2d at 293 (citations omitted).

Courts can consider "documents attached to the complaint as . . . exhibit[s] or incorporated . . . by reference," documents that a plaintiff possesses or knows about and relied upon in bringing suit, and also may take judicial notice of matters. *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 312 (S.D.N.Y. 2011) (original alterations omitted; alterations added) (*citing Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)); *see Falkner v. Beer*, 43 F.3d 130, 135 (2d Cir. 2006). Thus, "when a plaintiff chooses not to attach to the complaint or incorporate by reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1996) (*citing Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

## I.   SPARAGO'S GENERAL BUSINESS LAW § 349 CLAIM SHOULD BE DISMISSED

To state a claim under GBL § 349(h), "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 11 (2d Dep't 2012) (citation omitted); *accord Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). The plaintiff must "prove, as a threshold matter, that the defendant engaged in 'conduct that is consumer oriented'" *Waverly Props., LLC v. KMG Waverly,*

4

*LLC*, 824 F. Supp. 2d 547, 566–67 (S.D.N.Y. 2011) (citation omitted). A "deceptive act or practice" under GBL § 349 "is a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Bailey v. New York Law Sch.*, No. 16 CIV. 4283 (ER), 2019 WL 4640230, at *7 (S.D.N.Y. Sept. 24, 2019); (citations omitted)). The plaintiff must also "prove 'actual' injury" (*Stutman v. Chem. Bank*, 95 N.Y.2d at 29 (citations omitted)), and a claim "may not 'set[] forth deception as both act and injury'" (*Amalfitano v NBTY Inc.*, 128 A.D.3d 743, 745–46 (2d Dep't 2015) (alteration in original; citation omitted)).

## A. The Amended Complaint Does Not Allege any Representation or Omission Likely to Mislead a Reasonable Consumer Acting Reasonably under the Circumstances

"[T]he New York Court of Appeals . . . define[s] . . . 'materially misleading' conduct using an objective standard under which 'the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances' (Womack *v. Capital Stack, LLC*, No. 1:18-CV-04192 (ALC), 2019 WL 4142740, at *12 (S.D.N.Y. Aug. 30, 2019) (citations omitted)), and "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (citations omitted).

Sparago fails to allege anything that could "be likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83 (2d Cir. 2013), *aff'g Lebowitz v. Dow Jones & Co.*, 847 F. Supp. 2d 599, 605 (S.D.N.Y. 2012) (*quoting Stutman*, 95 N.Y.2d at 29). Moreover, "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial," and "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink*, 714 F.3d at 742 (citations omitted). The Second Circuit recently reaffirmed that "there can be no [GBL§] 349(a) claim when the allegedly deceptive practice was fully disclosed. . . ." *Chufen Chen v. Dunkin' Brands, Inc.*,

__F.3d__, 2020 WL 1522826, at *5–6 (2d Cir. 2020) (*quoting Broder v. MBNA Corp.*, 281 A.D.2d 369 (1st Dep't 2001)). *See Womack*, 2019 WL 4142740, at *12 ("If the allegedly deceptive act was 'fully disclosed,' there can be no GBL § 349(a) claim." (*citing Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007); *Broder*, 281 A.D.2d at 371; *Watts v. Jackson Hewitt Tax Serv.*, Inc., 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008)). *See also Stewart v. Riviana Foods Inc.*, No. 16-CV-6157 (NSR), 2017 WL 4045952, at *9 (S.D.N.Y. Sept. 11, 2017) ("[T]he the presence of a disclaimer or similar clarifying language may defeat a claim of deception."); *Dimond v. Darden Rests., Inc.*, No. 13 Civ. 5244 (KPF), 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014).

Sparago does not dispute the substance of the Purchase Agreement, or claim that any of its terms and conditions are deceptive, misleading, unclear, or unenforceable. He does not allege a cause of action for breach of contract.[2] Sparago nevertheless claims that "Beaver Mountain hides behind Paragraph 10 of the Purchase Agreement directly in contrast with all of its consumer-oriented promises that Beaver Mountain 'always' has its customers' backs." (Amended Complaint, ¶ 65). He admits the Purchase Agreement states that "THE PURCHASER ACKNOWLEDGES THAT THE SELLER IS A SUPPLIER OF MATERIALS ONLY." (*Id. at* ¶ 60 (capitalization in original) (*quoting* Ex. 1, p. 2)). He admits that the Purchase Agreement "provides that 'All responsibility of materials from the Seller ends on delivery in good condition of materials listed in this Purchase Agreement,'" states "that 'The seller assumes no responsibility for erection or proper

_____

[2] Sparago alleges that "[t]he Purchase Agreement . . . contains a series of boilerplate terms on the reverse side of the page (in a font smaller than 10-point). . . ." (Amended Complaint, ¶ 58 (*citing* Ex. 1)). That allegation is meaningless, however, because he does not allege that the font is illegible or that the any provisions are written in smaller type. Moreover, CPLR § 4544 only applies "where the print is not clear and legible or is *less than eight points in depth or five and one-half points in depth for upper case type*. . . ." (emphasis added).

installation of materials' and that 'The Seller is not responsible for the quality of the contractor(s)' work.'" (*Id.* at ¶¶ 60–62 (*quoting* Ex.1, p. 2)).

Sparago signed below words advising him that "[t]his Purchase Agreement . . . is subject to the Terms and Conditions stated on reverse side," yet claims that "Beaver Mountain does not point out to its customers these important terms on the reverse side of the page." (*Id.* at ¶ 62; Ex. 1, p. 1). The Second Circuit routinely enforces liability waivers that plaintiffs signed "without reading or understanding them." *Aylaian v. Town of Huntington*, 459 F. App'x 25, 27 (2d Cir. 2012); *see AXA Versicherung AG v. New Hampshire Ins. Co.*, 391 F. App'x 25, 30 (2d Cir. 2010) (rejecting plaintiff's "argu[ment] that the surrounding circumstances absolve its failure to fully read the wordings and understand that the reinsurance facilities were (at least pursuant to the unambiguous language of the wordings) being operated in a manner that directly contradicted its own expectations."). In analogous circumstances, *Generale Bank, New York Branch v. Wassel* enforced a forum selection clause "written in *plain English and printed directly above Wassel's signature. Wassel was obligated to read the forum selection clause and he is conclusively bound by his signature* on this document." 779 F. Supp. 310, 315 (S.D.N.Y. 1991) (emphasis added).

Sparago claims that Beaver Mountain "*quietly has its customers sign* a Purchase Agreement" (*id.* at ¶ 130 (emphasis added); *id.* at ¶ 10), "has its customers sign a Purchase Agreement . . . *that quietly tries to change the status* between Beaver Mountain and its customers (*id.* at ¶ 7 (emphasis added); *id.* at ¶ 13), and alludes to the "*quiet inclusion of the terms in Paragraph 10. . . .*" (*id.* at ¶ 134 (emphasis added)).[3] Yet, he admits that the Purchase Agreement states (in capital letters): "THE PURCHASER ACKNOWLEDGES THAT THE SELLER IS A

---

[3] Section B of the "Factual Allegations Common to all Causes of Action" also claims that "Customers Sign a Purchase Agreement . . . *Quietly Stating* Beaver Mountain is Merely a Supplier of Materials." (*Id.*, Factual Allegations Common to all Causes of Action, § B (emphasis added)).

SUPPLIER OF MATERIALS ONLY." (Ex. 1, p. 2 (capitalization in original); *see* Amended Complaint, ¶ 8 (quoting *id.* and noting "capitalization in original")).

The Purchase Agreement does not "*Quietly Stat*[*e*] Beaver Mountain is Merely a Supplier of Materials." (*Id.*) (emphasis added). It proclaims that fact in uppercase letters. *See Stewart v. Riviana Foods Inc.*, 2017 WL 4045952, at \*10 ("The disclaimer appears in red font and is highlighted in yellow."). Sparago's evidence of subterfuge is a loudly emphasized clause written in capital letters, showing that the terms and conditions were fully and clearly (*See* Ex. p. 1, p .2).

Sparago's GBL § 349 claim essentially consists of an allegation that the Purchase Agreement was misleading or deceptive because he never read it. (*E.g.*, *id.* at ¶ 10 ("Beaver Mountain certainly did not point out the provisions . . . and it certainly did not tell Mr. Sparago that the Purchase Agreement contained [the] provisions. . . .")). He fails to state a claim under GBL § 349 due to the "disclaimer or similar clarifying language" in the Purchase Agreement, showing that "allegedly deceptive practice was fully disclosed" *Fink*, 714 F.3d at 742 (citations omitted); *see Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 85 (2d Cir. 2013); *Cohen v. Hertz Corp.,* No. 13 Civ. 1205(LTS)(AJP), 2013 WL 9450421, n.6 (S.D.N.Y. Nov. 26, 2013) ("Plaintiff's . . . claim under [GBL § 349] also fails because the terms of the bargain were fully disclosed to Plaintiff prior to his acceptance of the car rental, and thus there was 'no deceptive omission giving rise to a [GBL §] 349 claim.") (citation omitted); *Stewart*, 2017 WL 4045952; *Amalfitano v. NBTY Inc.*, 128 A.D.3d 743, 745 (2d Dep't 2015); *Beneficial Homeowner Serv. Corp. v. Williams*, 113 A.D.3d 713, 714–15 (2d Dep't 2014); *Lum v. New Century Mtge. Corp.*, 19 A.D.3d 558, 559 (2d Dep't 2005); *Broder*, 281 A.D.2d at 371).

GBL § 349 additionally requires a plaintiff to allege misrepresentations that are "factual in nature and not promissory or relating to future events that might never come to fruition." *Hydro*

*Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000) (*citing Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987); *Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 74 (1st Dep't 2000). Non-actionable puffery cannot support a claim under GBL § 349. *See Hydro Investors, Inc.*, 227 F.3d at 20–21; *Henneberry*, 415 F.Supp.2d at 452; *Shema Kolainu-Hear Our Voices v. ProviderSoft, LLC*, 832 F. Supp. 194, 208 (E.D.N.Y. 2010) ( [M]ost of the statements . . . from defendant's website are mere puffery, including promises that ProviderSoft EI was a 'state of the art' interface that would provide compliance 'at a previously unimaginable level.' Similarly, Providersoft representative Shaw's averments that the software was 'great' and 'foolproof' are nothing more than opinions and thus puffery.") (citations omitted).

**B.      Claims under GBL § 349 Cannot Set Forth Deception as Both Act and Injury**

A plaintiff who "fail[s] to allege actual harm or that []he sustained a pecuniary injury . . . fail[s] to state a claim under [GBL] § 349." *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007) (citations omitted)). Sparago fails to allege actual harm because "[t]he Court of Appeals . . . has rejected th[e] . . . argument . . . 'that consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have suffered an injury under [GBL] § 349.'" *Baron*, 42 A.D.3d at 629 (*quoting Small*, 94 N.Y.2d at 56)); *accord Braynina v. TJX Cos.*, No. 15 CIV. 5897 (KPF), 2016 WL 5374134, at *10 (S.D.N.Y. Sept. 26, 2016). A GBL § 349 claim "may not 'set[ ] forth deception as both act and injury.'" *Amalfitano v NBTY Inc.*, 128 A.D.3d 743, 745–46 (2d Dep't 2015) (alteration in original) (citation omitted).

Moreover, though GBL § 349 "does not require plaintiff to allege fraud, and therefore the particularity requirements of [Fed. R. Civ. P. 9(b)] are not triggered," it still requires a "plaintiff [to] allege with some specificity the allegedly deceptive acts or practices that form the basis for the claim." *Lava Trading Inc. v. Hartford Fire Ins. Co.*, 326 F. Supp. 2d 434, 438 (S.D.N.Y. 2004). Without supporting factual allegations, "conclusory allegations, even of the existence of a claim

settlement policy designed to deceive the public, are not sufficient to state a claim under [GBL §] 349. . . ." *Id.* at 439 (citations omitted). As such, while "[i]t is not necessary to allege reliance on the [alleged] misinformation to succeed on [a] claim [under GBL § 349] . . . , *the plaintiff will have to show that the defendant's 'material deceptive act' caused the injury*." *Singh v. Queens Ledger Newspaper Grp.*, 2 A.D.3d 703, 704 (2d Dep't 2003) (emphasis added) (citations omitted).

Sparago has not, and cannot, allege facts to show causation under GBL § 349 despite quoting extensively (and selectively) from Beaver Mountain's website:

- https://beavermtn.com/get-started/ (Amended Complaint, ¶¶ 40–50, 121, 158).
- https://beavermtn.com/faqs/#1538054546547-5ec84f49-8788 (*Id.* at ¶¶ 52)
- https://beavermtn.com/faqs/#1538054580827-f0960e64-158f (*Id.* at ¶ 53).
- https://beavermtn.com/builders-corner/ (*Id.* at ¶ 54).

The "Builders Corner" and "FAQs" pages did not exist when Sparago signed the Purchase Agreement A on December 16, 2017. *Compare* Beaver Mountain, Site Map (archived July 7, 2015)[4] (showing neither "Builders' Corner" nor "FAQ" pages existed in July 2015) *with id.* (archived Jan. 7, 2016)[5] (showing neither "Builders' Corner" nor "FAQ" pages existed in January 2016), *id.* (archived May 25, 2018)[6] (showing neither "Builders Corner" nor "FAQ" pages existed in May 2018) *and id.* (archived Mar. 16, 2019)[7] (showing that the "Builders' Corner" and "FAQ" pages were created between May 25, 2018 and March 16, 2019). Sparago quotes extensively from the "Get Started" page as it exists in 2020; that page, however, was updated after October 2018 and could not have mislead Sparago between 2015 and February 2018—the language that Sparago quotes in the Amended Complaint did not even exist until months after Sparago hired R&L, and construction had already begun.

---

[4] *Available at* https://web.archive.org/web/20150707093054/http://www.beavermtn.com/sitemap
[5] *Available at* https://web.archive.org/web/20160107013930/http://www.beavermtn.com/sitemap
[6] *Available at* https://web.archive.org/web/20180525214815/http://beavermtn.com/sitemap
[7] *Available at* https://web.archive.org/web/20190316232308/http://beavermtn.com/site-map/

*Compare* Beaver Mountain, *Getting Started*, (archived Nov. 12, 2017)[8] (saying that Step 6 ("Finalize Your Building Plans") involves "[f]inal approval of *design/plans and material specifications*, order your Beaver Mountain log home, timber frame home or hybrid home, *hire the builder you selected, secure financing (if needed)* and confirm building schedule") (emphasis added) *and id.* (archived Oct. 14, 2018)[9] (same) *with id.* https://beavermtn.com/get-started/ (last accessed Apr. 27, 2020) (saying that in Step 6 ("Nailing Down the Final Details"), "[a]fter you review and authorize the final home design/plans and approve the budget, we'll generate a complete material specifications list, and lock in your construction schedule. Plus, we'll help you hire your chosen Builder and secure any necessary financing.") *and* Amended Complaint, ¶ 45 (same)).

None of the webpages that Sparago cites, nor the 2019 holiday card (*id.* ¶ 26), can provide any evidence whatsoever that he "suffered injury as a result of the allegedly deceptive act or practice." *N. State Autobahn, Inc.*, 102 A.D.3d at 11 (citation omitted). Sparago exclusively references things that did not even exist at the relevant time, and so he cannot "show that the defendant's material deceptive act caused the injury" as required to state a claim under GBL § 349. *Gale v. IBM Corp.*, 9 A.D.3d 446, 447 (2d Dep't. 2004) (citation omitted). In *Gale*, while:

> [T]he plaintiff cite[d] particular misleading statements by IBM regarding the reliability of the IBM Deskstar 75GXP, he nowhere states in his complaint that he saw any of these statements before he purchased or came into possession of his hard drive. *If the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury.*" *Id.* (citation omitted).

---

[8] *Available at* https://web.archive.org/web/20171112082721/http://www.beavermtn.com/getting-started.

[9] *Available at* https://web.archive.org/web/20181014064141/http://www.beavermtn.com/getting-started

(emphasis in original). *See also Fink*, 714 F.3d 739 ("Plaintiffs' submission is perplexing. The advertisement that they offer is dated August 7, 2009—nine months *after* Plaintiffs filed suit.") Sparago could not see webpages (or their current versions) in 2015–2017 that did not exist or were not updated until 2018. He cannot show causation or actual injury, and his GBL § 349 claim should be dismissed.

## II.   SPARAGO FAILS TO STATE A CAUSE OF ACTION BOTH FOR NEGLIGENCE (SECOND CAUSE OF ACTION) AND FOR NEGLIGENT MISREPRESENTATION (THIRD CAUSE OF ACTION)

### A.   Third Cause of Action: Negligent Misrepresentation

"To state a claim for negligent misrepresentation under New York law, the plaintiff must allege that '(1) the defendant had a duty, *as a result of a special relationship*, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.'" *Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012) (emphasis added) (citations omitted). *See Naughright v. Weiss*, 826 F. Supp. 2d 676, 688 (S.D.N.Y. 2011). Because "[n]egligent misrepresentation is a type of fraud and, as such, is subject to [FRCP] 9(b)'s heightened pleading standard." *Naughright*, 826 F. Supp. 2d at 688 (first alteration in original) (citations omitted); *see PetEdge, Inc. v. Garg*, 234 F.Supp.3d 477, 496 (S.D.N.Y. 2017) (collecting cases).

Fed. R. Civ. P. 9(b) requires a plaintiff to "detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Henneberry*, 415 F. Supp. 2d at 454–55 (citations omitted). Even "[i]n cases where the alleged fraud consists of an omission and the plaintiff is unable to specify the time and place because no

act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud. *Odyssey Re (London) Ltd.*, 85 F.Supp.2d at 293 (citations omitted).

I.   <u>Beaver Mountain Lacks any Unique or Specialized Expertise and is not in a Special Position of Confidence or Trust as Negligent Misrepresentation Requires</u>

"[A] plaintiff may not recover for negligent misrepresentation in the absence of a special relationship of trust or confidence between the parties." *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 158 (2d Cir. 1995) (citations omitted). This "requires the plaintiff to demonstrate . . . the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff. . . ." *J.A.O. Acquisition Corp. v. Stavitsky*, 8 N.Y.3d 144, 148 (2007). A plaintiff therefore "must sufficiently allege the establishment of a relationship tantamount to contractual privity" to sustain a negligent misrepresentation claim in the absence of a contractual relationship." *105 Mt. Kisco Assocs. LLC*, 2019 WL 6998008, at *14 (citations omitted).

New York employs the "duty" element to "strictly limit[] negligent misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *Anschutz Corp.*, 690 F.3d at 114 (citations omitted)). "In the absence of a contractual relationship," therefore, "a plaintiff must sufficiently allege the establishment of a relationship tantamount to contractual privity" (*105 Mt. Kisco Assoc. LLC*, 2019 WL 6998008, at *14 (citations omitted)), which "requires: (1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance." *Ridge Seneca Plaza,*

13

*LLC v. BP Prods. N.A.*, 546 F. App'x 44, 46 (2d Cir. 2013). *See 105 Mt. Kisco Assoc. LLC*, 2019 WL 6998008, at *14; *Mandarin Trading Ltd.*, 16 N.Y.3d at 180; *J.A.O. Acquisition Corp.*, 8 N.Y.3d at 148.

The Court of Appeals "ha[s] reiterated time and again that 'before a party may recover in tort for pecuniary loss sustained as a result of another's negligent misrepresentations there must be a showing that there was either actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *Parrott v. Coopers & Lybrand, L.L.P.*, 95 N.Y.2d 479, 483 (2000) (citations omitted). New York has also "declined to adopt a rule permitting recovery by any 'foreseeable' plaintiff who relied on [a] negligently prepared report, and ha[s] rejected even a somewhat narrower rule that would permit recovery where the reliant party or class of parties was actually known or foreseen by the defendants." *Parrott*, 95 N.Y.2d at 483 (*citing Credit Alliance Corp.*, 65 N.Y.2d at 553, n. 11). This reflects a "belief that imposition of such broad liability is unwise as a matter of policy or, at the least, a matter for legislative rather than judicial reform." *Ossining Union Free Sch. Dist.*, 73 N.Y.2d at 425. The Court of Appeals has chosen to "define[] th[e] duty [of care] narrowly, more narrowly than other jurisdictions." *Id.* Sparago's allegation that the damages he "suffered directly as a result of Beaver Mountain's negligent recommendation of Robert Beechel were completely foreseeable (and avoidable)" is irrelevant; it does not speak to duty. (Amended Complaint, ¶ 152).

Sparago does not allege facts sufficient to establish a duty of care. He just states that "[a]s detailed above, Mr. Sparago and Beaver Mountain had a relationship of trust or confidence that imposed a duty on Beaver Mountain to impart correct and complete information to Mr. Sparago." (*Id.* at ¶ 155). The "duty" that Sparago alleges for negligent misrepresentation is thus identical to the "duty" he alleged for plain negligence. (*See id.* at 154). Yet the law is clear that "not all

representations made by a seller of goods will give rise to a duty to speak with care," and that "liability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party." *Dallas Aerospace, Inc.*, 352 F.3d at 788 (*quoting Kimmell*, 89 N.Y.2d at 263).[10] Especially "[i]n a commercial context, liability does not attach as a matter of course for merely negligent statements; rather, it is imposed only on those who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 334 (S.D.N.Y. 2012), *aff'd* 712 F.3d 136 (2d Cir. 2013) (citations omitted). Moreover, a party's "superior knowledge of the particulars of its own business practices" cannot "special relationship" sufficient for negligent misrepresentation. *Id.* at 335 (*quoting MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 297 (1st Dep't 2011). *See Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 578 (2011); *accord Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490, 578 (2d Cir. 2014); *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 425, 451 (S.D.N.Y. 1996). Negligent misrepresentation requires "the declarant [to] express the words directly . . . to one to whom [he] is bound by some . . . duty of care." *Trepel v. Dippold*, No. 04 Civ. 8310(DLC), 2006 WL 3054336, at *6 (S.D.N.Y. Oct. 27, 2006) (citation omitted).

---

[10] Sparago faces the addition obstacle that "ordinarily, construction contracts are not construed as conferring third-party beneficiary enforcement rights," including where plaintiffs "ha[ve] the functional equivalent of privity." (*Luckow v. RBG Design-Build, Inc.*, 156 A.D.3d 1289, 1291 (3d Dep't 2017) (*citing Port Chester Elec. Const. Co. v. Atlas*, 40 N.Y.2d 652 (1976); *Lake Placid Club Attached Lodges v. Elizabethtown Bldrs.*, 131 A.D.2d 159, 162 (3d Dep't 1987)).

2.   <u>Sparago Cannot Justifiably Rely on Alleged Representations or Omissions
     Disclaimed by the Purchase Agreement</u>

Sparago's negligent misrepresentation claim fails because the Purchase Agreement makes

any reliance on the alleged misrepresentations or omissions unjustifiable as a matter of law.

*Anschutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 114 (2d Cir. 2012). Agreements

disclaiming reliance on any asserted misrepresentation "preclude . . . [a party] claiming reliance

on any asserted misrepresentation because a party cannot justifiably rely on a representation that

has been disclaimed by agreement." *Dallas Aerospace, Inc.*, 352 F.3d at 785 (*citing Danann Realty

Corp. v. Harris*, 5 N.Y.2d 317 (1959)). Sparago alleges his claimed reliance was reasonable in

wholly conclusory terms (*see* Amended Complaint *id.* at ¶¶ 97, 122, 168, 169); *Fed. Hous. Fin.

Agency*, 858 F. Supp. 2d at 335 (saying that "superior knowledge of the particulars of its own

business practices" does not create the "special relationship" needed for a negligent

misrepresentation claim as a matter of law) (citation omitted); *Greenberg*, 17 N.Y.3d at 578.

Sparago signed the Purchase Agreement on December 16, 2017. (Ex. 1, p. 1). He "hired

Robert Beechel as his builder *in February 2018*." (Amended Complaint, ¶ 102 (emphasis added);

*see id.* at ¶ 168.)). He claims to have "relied on Beaver Mountain's positive recommendation of

Robert Beechel as a reputable builder . . . throughout the end of 2017 *and early 2018*[]." (*Id.* at ¶

159 (emphasis added)). Sparago's claimed reliance is unreasonable as a matter of law, because he

"[a]cknowledg[ed] that [he was] solely responsible for the selection of the contractor(s)" several

months before he hired R&L. (Ex. 1, p. 2 at ¶ 10; *see* Amended Complaint, ¶¶ 102, 159; R&L

Complaint). Sparago's allegations disprove his claim that "Beaver Mountain does not have its

customers sign the Purchase Agreement until . . . <u>after</u> they have selected a builder." (Amended

Complaint, ¶ 135 (*citing* Ex. 2)). Because "a party cannot justifiably rely on a representation that

has been disclaimed by agreement," the negligent misrepresentation claim should be dismissed. *See Dallas Aerospace, Inc.*, 352 F.3d at 785.

    3.    <u>Sparago's Negligent Misrepresentation Claim Fails to Satisfy Fed. R. Civ. P. 9(b)</u>

Sparago's negligent misrepresentation claim includes many vague allegations common to all causes of action, which clearly sound in fraud. (*E.g.*, Amended Complaint, ¶¶ 120 ("Beaver Mountain . . . *intentionally* omitted negative information about . . . Beechel") (emphasis added); *id.* at ¶¶ 33, 94, 95, 97–98, 102 121–122, 128, 130, 131, 145, 148)). Fed. R. Civ. P. 9(b) applies to these "classic fraud allegations" as well—"allegations of misrepresentations and omissions made with intent to defraud upon which plaintiffs relied." *In re Ultrafem Inc., Sec. Litig.*, 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000) (citation omitted). And a "claim for negligent misrepresentation [that] 'realleges and incorporates by reference' all prior allegations, including those alleging fraud. . . . . [,] alleges intentional, not negligent, misrepresentation and is subject to [FRCP] 9(b).")." *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 108 (S.D.N.Y. 2009) (citation omitted). FRCP 9(b) thereby applies where the plaintiff merely "repeat[s] and reallege[s]" previous allegations in a complaint "as if fully set forth [t]herein," where the previous allegations sound in fraud. *Ultrafem Inc.*, 91 F. Supp. 2d at 690-91. Courts should not "parse the[ plaintiff's] allegations to find a negligence claim." *Id.* at 690. His allegations common to all claims are thus subject to FRCP 9(b) with regard to the negligent misrepresentation claim—and fail to meet that standard.

Courts consistently find similar allegations that a party "caused," "directed," and "participated in" fraudulent conduct to be "entirely conclusory." *SIPC v. Bernard L. Madoff Inv. Sec. LLC*, 546 B.R. 284, 301–02 (Bankr. S.D.N.Y. 2016); *see B&M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 481 (S.D.N.Y. 2010). Sparago's conclusory allegation that "Beaver Mountain breached its duty of care to Mr. Sparago by omitting critical information about other customer complaints" similarly fails to the extent that Sparago seeks to hold Beaver

17

Mountain liable for negligent misrepresentation. (Amended Complaint, ¶ 148; *see id.* at ¶ 154 ("[R]epeat[ing]s and re-alleges each and every one of the foregoing allegations as though fully set forth herein.")). By simply asserting that Beaver Mountain owed him a duty of disclosure based on vague claims that it "assumed the role of project manager" and "told [him]about its stated expertise" (*id.* at 146–47), Sparago "fails to allege that [Beaver Mountain] owed [him] any duty to disclose anything." *PetEdge, Inc.*, 234 F. Supp. 3d at 493.

For example, the pleadings in *Odyssey* "d[id] not approach the level of specificity . . . required by [Fed. R. Civ. P.] 9(b). . . .Odyssey's pleading . . . alleges that the defendants collectively 'concealed from Odyssey information concerning the loss history and certain unprofitability of the[] transactions.'" 85 F. Supp. 2d at 294; *compare*, *e.g.*, Amended Complaint, ¶¶ 21, 33, 34, 92, 94, 102, 119, 120, 140, 167. 119, 140, 166, 167, 168, 169). *Odyssey* said that "[*a*]*t a minimum*, FRCP 9(b) means that plaintiffs *may not maintain an action in fraud by simply alleging a failure, to disclose 'information.*'" 85 F. Supp. 2d at 294 (emphasis added) (citation omitted). As such, Sparago cannot maintain a negligent misrepresentation claim by restating his conclusory assertion that "Beaver Mountain failed to disclose all of the material information it had about Robert Beechel" throughout. (Amended Complaint, ¶ 119; *see*, *id.* at ¶¶ 21, 33–34, 92, 94, 102, 119–120, 140, 166–169).

**B.     Second Cause of Action: Negligence**

I.     <u>The Purchase Agreement Exculpatory Clause Bars Sparago's Negligence Claim</u>

Sparago's negligence claim is barred because "[u]nder New York law, unambiguous contractual clauses absolving a party for liability from its own ordinary negligence . . . are enforceable." *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 CIV. 8688 (WHP), 2002 WL 362794, at *15 (S.D.N.Y. Mar. 6, 2002) (citations omitted"). Inasmuch as Sparago "alleges mere negligence . . . the [Purchase Agreement] provisions operate

to bar [his] claims as a matter of law." *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 99 (S.D.N.Y. 2004)

  2.  <u>Sparago Fails to Allege Facts from which the Court can Infer a Duty of Care Existed</u>

  "[T]o prevail on a negligence claim, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (2016) (citations omitted). "It is well established that before a defendant may be held liable for negligence it must be shown that the defendant owes a duty to the plaintiff." *Pulka v. Edelman*, 40 N.Y.2d 781, 782 (1976) (citations omitted). *See Pasternack*, 27 N.Y.3d 825 ("In the absence of a duty, as a matter of law, there can be no liability" (citations omitted)). Crucially, "the *existence and scope of a duty is a question of law* requiring courts to balance sometimes competing public policy considerations." *Espinal v. Melville Snow Contractors*, 98 N.Y.2d 136, 138 (2002) (emphasis added; citations omitted). And it is clear that "[n]othing more than knowledge of the particulars of [a] company's business—and of the true situation underlying the misrepresentations pertaining to that business . . . [does] not constitute the type of 'specialized knowledge' that is required in order to impose a duty of care in the commercial context.'" *BNP Paribas Mortg. Corp.*, 949 F. Supp.2d 511–12 (citation omitted). Yet that is all that Sparago alleges.

  Sparago's negligence claim just restates his negligent misrepresentation claim in vaguer terms. Paragraphs 40–124 state "factual allegations common to all causes of action" and both claims "repeat[] and re-allege[] each and every one of the foregoing allegations as though fully set forth [t]herein." (Amended Complaint, ¶¶ 143, 154). Sparago's negligent misrepresentation claim comprises one hundred seventy-one paragraphs, but only eighteen are unique to that claim; one

hundred fifty-three are common to the negligence claim as well. (*See id.* at ¶¶ 1–153, 154–171).[11] His failure to allege any basis for a duty of care therefore also warrants dismissal of his negligent misrepresentation claim. *See Pasternack v. Lab. Corp. of Am.*, No. 10 Civ. 4426(PGG), 2014 WL 4832299, at \*14 (S.D.N.Y. Sept. 29, 2014), *aff'd sub nom. Pasternack v. Lab. Corp. of Am. Holdings*, 839 F.3d 151 (2d Cir. 2016) (citations omitted).

Furthermore, Sparago cannot bypass the requirements of a negligent misrepresentation claim by repackaging it as simple negligence with a conclusory assertion that Beaver Mountain had a "duty to perform properly in th[e] role [of project manager." *See Naughright v. Weiss*, 826 F. Supp. 2d at 688; *White v. Guarente*, 43 N.Y.2d 356, 362–63 (1977). Negligent misrepresentation is essentially a negligence claim that would fail "[i]n ordinary commercial contexts" because no duty is owed, and thus additionally requires the plaintiff "to allege that the speaker is bound to the other party "by some relation or duty of care." *Morgan Chase Bank*, 350 F. Supp. 2d at 400 (*citing Dallas Aerospace, Inc.*, 352 F.3d at 788). The Court of Appeals has "neither abolished the requirement of a special relationship nor loosened the requirement that such relationship must arise due to some factor extraneous to the contract's terms. . . ." *Kimmell*, 89 N.Y.2d at 263. Negligent misrepresentation is a narrow application of the general principle that "[l]iability for negligence may result only from the breach of a duty running between a tortfeasor and the injured party." *Id.*; *see Pasternack*, 27 N.Y.3d at 825.

---

[11] In addition, many of the allegations "unique" to Sparago's negligent misrepresentation claim merely repeat and re-allege the forgoing allegations (*id.* ¶ 154), or say that "[a]s detailed above, Mr. Sparago and Beaver Mountain had a relationship of trust or confidence that imposed a duty on Beaver Mountain to impart correct and complete information to Mr. Sparago." (*id.* ¶ 155). Other paragraphs just repeat the same allegations "common to all causes of action." (*Compare*, *e.g.*, *id.* ¶¶ 64, 121 *with id.* ¶ 158; *id.* ¶ 91 *with id.* ¶ 160; *id.* ¶¶ 92, 94, 101, 102, 140 *with id.* ¶¶ 163, 166, 167, 168; *id.* ¶¶ 95, 97, 98 *with id.* ¶¶ 159, 168, 169). The last two paragraphs allege the same damages claimed for all three claims. (*Id.* ¶¶ 170–171). Fewer than ten paragraphs even arguably could contain allegations unique to Sparago's negligent misrepresentation claim.

Sparago's negligence claim is "based on the same set of facts as those upon which a fraud claim is grounded. . . ." *PetEdge, Inc.*, 234 F. Supp. 3d at 496 (*quoting Eaves*, 785 F. Supp. 2d at 254–55. FRCP 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." *Patriarch P'ners Agencies Servs., LLC v. Zohar CDO 2003-I, Ltd.*, 16 Civ. 4488 (VM), 2017 WL 1535385 at *5 (S.D.N.Y. Apr. 20, 2017) (*quoting Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004); *citing* Fed. R. Civ. P. 9(b)). "Determining whether a non-fraud claim sounds in fraud 'necessarily requires a case-by-case analysis.'" *Patriarch P'ners*, LLC, 2017 WL 1535385 at *5 (citations omitted). Sparago's negligence claim is just a conclusory restatement of his negligent misrepresentation claim, and he expressly incorporates the allegations in support of his negligence claim as "[a]llegations in support of . . . a negligent misrepresentation . . . claim [that] must be pleaded with particularity pursuant to [Fed. R. Civ. P.] 9(b)." *Henneberry*, 415 F. Supp. 2d at 454–55 (citation omitted); (Amended Complaint, ¶ 154).

*Naughright* dismissed a "Negligent Advice" claim as duplicative of negligent misrepresentation. 826 F. Supp. 2d at 688 ("The. . . . Cause of Action . . . labeled 'Negligent Advice[]'. . . . speaks in terms of a breach of duty not to make false statements, . . . [and] reliance on those false statements, which resulted in harm. . . . Defendants . . . characterize[] this count as negligent misrepresentation. However [it] is characterized, the essential element is a duty which the Complaint fails to allege adequately.") (citations omitted). The court considered both claims according to the elements of negligent misrepresentation and under FRCP 9(b) to both. *Id.* at 688; *see Maalouf v. Salomon Smith Barney, Inc.*, No. 02 Civ. 4770(SAS), 2003 WL 1858153, at *4 (S.D.N.Y. Apr. 10, 2003)).

Sparago fails to allege facts from which the Court can infer that Beaver Mountain owed him a duty of care. The negligence claim should also be dismissed for the same reasons as his negligent misrepresentation claim, because it simply re-alleges negligent misrepresentation in more general terms.

## CONCLUSION

Beaver Mountain respectfully requests an order dismissing the Complaint against it, together with such other and further relief as the Court deems just and proper.

Dated: June 10, 2020

Respectfully submitted,

/S/Paul J. Sweeney
Paul J. Sweeney, Esq.
Federal Bar Roll No. PS0167
COUGHLIN & GERHART, LLP
*Attorneys for Defendant*
*Beaver Mountain Log Homes, Inc.*
99 Corporate Drive
Binghamton, New York 13904
PO Box 2039
Binghamton, New York 13902-2039
Telephone:  (607) 723-9511
Facsimile:  (607) 723-1530
psweeney@cglawoffices.com
