UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY SPARAGO,

Plaintiff,

-against-

BEAVER MOUNTAIN LOG HOMES, INC.,

Defendant.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

Case No. 7:20-cv-00276

## TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………1

ARGUMENT……………………………………………………………………………..1

I. Sparago Fails to State a General Business Law ("GBL") § 349 Claim because Beaver Mountain's purported deception is not Alleged to be the cause of any actual injury…………………………………………......................................1

II. Sparago Fails to State a Cause of Action on his Negligence-Based Claims…………………………………………………………………………..4

a. Negligent Misrepresentation……………………………………………..4

1. Sparago's Negligent Misrepresentation Claim Fails to Satisfy Fed. R. Civ. P. 9 (b)…………………………………………………………...4

2. In Any Event, the Disclaimers in the Purchase Agreement Make Sparago's Reliance Upon any Alleged Extracontractual Representations and/or Omissions Unreasonable……………………………………5

b. Negligence…………………………………………………………………..9

CONCLUSION…………………………………………………………………………10

## TABLE OF AUTHORITIES

**Cases**

*Abraham v Am. Home Mortg. Servicing, Inc.*, 947 F.Supp.2d 222, 234-235 (E.D.N.Y. 2013) ..... 3
*Abu Dhabi Commercial Bank v Morgan Stanley & Co. Inc.*, 08 CIV. 7508 SAS, 2013 WL 837536, at *5 (S.D.N.Y. Mar. 6, 2013) ..... 8
Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp., 351 F. Supp. 2d 79, 99 (S.D.N.Y. 2004) ..... 10
*Amalfitano v NBTY Inc.*, 128 A.D.3d 743, 746 (2d Dept. 2015) ..... 1
*Arroyo v. PHH Mortg. Corp.*, 13-CV-2335 JS AKT, 2014 WL 2048384, at *11 (E.D.N.Y. May 19, 2014) ..... 1, 3
*Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 158 (2d Cir. 1995) ..... 8
*Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007) ..... 1
*Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 115 A.D.3d 128, 137 (1st Dept. 2014) ..... 6
*Coraud LLC v Kidville Franchise Co., LLC,* 109 F.Supp.3d 615, 619-620 (S.D.N.Y. 2015) ... 6, 8
*Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-22 (N.Y. 1959) ..... 6, 8
*Dorsey Products Corp. v U.S. Rubber Co.*, 21 A.D.2d 866, 867 (1st Dept. 1964) ..... 10
*Fadem v. Ford Motor Co.*, 352 F.Supp.2d 501, 516 (S.D.N.Y. 2005) ..... 2, 8
*JP Morgan Chase Bank v Winnick*, 350 F.Supp.2d 393, 400-404 (S.D.N.Y. 2004) ..... 10
*Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) ..... 10
*LBBW Luxemburg S.A. v Wells Fargo Sec. LLC*, 10 F.Supp.3d 504, 517 (SDNY 2014) ..... 8
*Lewis v. Hertz Corp.*, 181 AD2d 493, 493-494 (1st Dept. 1992) ..... 4
*Natoli v NYC Partnership Hous. Dev. Fund Co., Inc.*, 103 A.D.3d 611, 612-13 (2d Dept. 2013) 8
*Naughright v. Weiss*, 826 F.Supp.2d 676, 689-690 (S.D.N.Y. 2011) ..... 4, 10
*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F.Supp.2d 282, 293 (S.D.N.Y.2000) ..... 4, 5
*Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 CIV. 8688 (WHP), 2002 WL 362794, at *15 (S.D.N.Y. Mar. 6, 2002) ..... 10
*PetEdge, Inc. v. Garg*, 234 F.Supp.3d 477, 496 (S.D.N.Y. 2017) ..... 4
*Platinum-Beechwood Litig.*, 427 F.Supp.3d 395, 465 (S.D.N.Y. 2019) ..... 5
*Sands v. Ticketmaster-New York, Inc.*, 207 AD2d 687, (1st Dept. 1994) ..... 4
*Singh v. Queens Ledger Newspaper Grp.*, 2 A.D.3d 703, 704 (2d Dept. 2003) ..... 1
*Small v Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (1999) ..... 1
*Solutia Inc. v. FMC Corp.*,456 F.Supp.2d 429, 449-450 (S.D.N.Y. 2006) ..... 4
*Spinnato v Unity of Omaha Life Ins. Co.*, 322 F.Supp.3d 377, 398 (E.D.N.Y. 2018) ..... 5
*W. Intermodal Services, Ltd. v. Singamas Container Indus. Co., Ltd.*, 98 CIV. 8275 (RPP), 2000 WL 343780, at *3 (S.D.N.Y. Mar. 31, 2000) ..... 9
*Warner Theatre Assoc. Ltd. Partnership v Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d. Cir. 1998) ..... 8, 9
*Weaver v Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997) ..... 5

**Other Authorities**

General Business Law ("GBL") § 349 ..... Passim

## PRELIMINARY STATEMENT

Defendant, Beaver Mountain Log Homes, Inc. ("Beaver Mountain"), respectfully submits this Reply Memorandum of Law in further support of its Motion to Dismiss the Amended Complaint of Gary Sparago ("Sparago") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."),

## ARGUMENT

### I. SPARAGO FAILS TO STATE A GENERAL BUSINESS LAW ("GBL") § 349 CLAIM BECAUSE BEAVER MOUNTAIN'S PURPORTED DECEPTION IS NOT ALLEGED TO BE THE CAUSE OF ANY ACTUAL INJURY

A plaintiff who "fail[s] to allege **actual harm** or that []he sustained a pecuniary injury . . . fail[s] to state a claim under [GBL] § 349." *Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007) (emphasis added). And while "[i]t is not necessary to allege reliance on the [alleged] misinformation to succeed on [a GBL § 349] claim . . . the plaintiff will have to show that the defendant's material deceptive act **caused the injury**." *Singh v. Queens Ledger Newspaper Grp.*, 2 A.D.3d 703, 704 (2d Dept. 2003) (internal quotation marks and citations omitted) (emphasis added); *see Arroyo v. PHH Mortg. Corp.*, 13-CV-2335 JS AKT, 2014 WL 2048384, at *11 (E.D.N.Y. May 19, 2014) (emphasis added).

Here, Sparago's Amended Complaint alleges neither that Beaver Mountain's allegedly deceptive business practices caused him any actual injury nor that such alleged practices were the cause of any such injury, thus foreclosing his GBL § 349 claim. Indeed, Sparago's effort to clarify in his Memorandum of Law that he did, in fact, allege some form of actual harm or injury only serves to confirm and reinforce the fact that the Amended Complaint, at most, impermissibly "sets forth [Beaver Mountain's alleged] deception as both act and injury." *Small v Lorillard Tobacco Co., Inc.*, 94 N.Y.2d 43, 56 (1999); *Amalfitano v NBTY Inc.*, 128 A.D.3d 743, 746 (2d Dept. 2015).

Specifically, Sparago states that the actual injury he suffered is alleged at Paragraphs 139-141 of the Amended Complaint (ECF Doc. No. 17 at 17). However, Paragraph 139 merely states that he "suffered damages directly because of Beaver Mountain's deceptive conduct", and then goes on to reiterate what the allegedly deceptive conduct was. Paragraph 140 contains no allegations of actual injury either; it simply states that because of the allegedly deceptive practices "the damages from Beaver Mountain's deceptive 'bait and switch' conduct has [sic] materialized." Finally, Paragraph 141 states that Sparago was "harmed" by the fact that he is "bound by the terms in the Purchase Agreement that are wholly inconsistent with the advertised lure that Beaver Mountain would be there with [him] 'every step of the way.'" However, nowhere in the Amended Complaint does Sparago explain how being bound by the Purchase Agreement caused him actual injury. Rather, this is just another allegation that equates his "injury" with the allegedly deceptive act itself. And again, such allegations are insufficient to establish a GBL § 349 claim.

In his Memorandum of Law, Sparago alleges, for the very first time that the purported change in the business dynamic between the parties via the disclaimers in the Purchase Agreement resulted in "his loss of a legal right to sue Beaver Mountain for the construction errors it was (or should have been) overseeing as the project manager" (ECF Doc. No. 17 at 17). Whether or not this constitutes an actual injury, Sparago's belated effort to allege it in his Memorandum of Law "can be dismissed summarily on procedural grounds, because the allegation was not in [Sparago's] amended complaint. It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." *Fadem v. Ford Motor Co.*, 352 F.Supp.2d 501, 516 (S.D.N.Y. 2005). Because Sparago did not allege in his Amended Complaint an actual injury other than the alleged deception itself, his GBL § 349 claim should be dismissed.

Furthermore, Sparago has also failed to adequately plead that this injury was caused by Beaver Mountain's allegedly deceptive practices. Because Sparago (improperly) alleges in his Memorandum of Law that the injury he suffered was the loss of his perceived ability to sue Beaver Mountain for any construction defects due to the disclaimers in the Purchase Agreement he executed, logically, causation must be established by allegations that Beaver Mountain's alleged conduct effectively deceived him into entering into the Purchase Agreement (*i.e.*, the source of his purported actual injury). *See Abraham v Am. Home Mortg. Servicing, Inc.*, 947 F.Supp.2d 222, 234-235 (E.D.N.Y. 2013).

However, nowhere in the Amended Complaint does Sparago allege that he was deceived, induced or pressured by Beaver Mountain's allegedly deceptive conduct to sign the Purchase Agreement. Nor does Sparago allege that Beaver Mountain prevented him from negotiating the terms of the Agreement to avoid disclaiming his right to sue Beaver Mountain in the event of any construction-related damages. Rather, the only allegation in the Amended Complaint pertaining directly to the GBL § 349 claim that even mentions causation consists of the conclusory statement that "[a]s a direct and proximate result of Beaver Mountain's deceptive consumer-oriented conduct as alleged herein, Mr. Sparago has suffered direct, compensatory, and consequential damages" (ECF Doc. No. 10 at ¶ 142). Inasmuch as Sparago's allegations regarding causation utterly fail to offer the "essential" details of "how the alleged acts have caused the alleged injury," *Arroyo v PHH Mortg. Corp.*, 13-CV-2335 JS AKT, 2014 WL 2048384, at *11 (E.D.N.Y May 19, 2014), it is further submitted that Sparago's GBL § 349 claim should be dismissed on this ground as well.[1]

---

[1] Beaver Mountain relies on its prior argument that the Amended Complaint also does not allege anything that could be objectively likely to mislead a reasonable consumer (ECF Doc. No. 16-3 at 5-12). This argument is strengthened by the fact that Sparago admits that he "may not have seen the specific version of the web pages referenced in the Amended Complaint" (see ECF Doc. No. 17 at 15), which is, essentially, an acknowledgement that roughly half of his allegations regarding Beaver Mountain's allegedly misleading representations are false. And, indeed, there is not a single still-valid allegation or document currently before this Court indicating that Beaver Mountain ever represented to Sparago that it would assume responsibility for overseeing the construction of Sparago's addition. In any event,

## II. Sparago Fails to State a Cause of Action on his Negligence-Based Claims

### A. Negligent Misrepresentation

1. Sparago's Negligent Misrepresentation Claim Fails to Satisfy Fed. R. Civ. P. 9 (b)

In his Memorandum of Law, Sparago postulates that the heightened pleading standard of FRCP 9 (b) may not apply to his negligent misrepresentation claim (*see* ECF Doc. No. 17 at 22 (arguing that "[i]rrespective of whether Rule 9(b) applies to negligent misrepresentation claims, the Amended Complaint satisfies Rule 9(b) anyway.")). However, as this Court has expressly held, it does. *PetEdge, Inc. v. Garg*, 234 F.Supp.3d 477, 496 (S.D.N.Y. 2017); *Naughright v. Weiss*, 826 F.Supp.2d 676, 689 (S.D.N.Y. 2011).

Here, by Sparago's own admission, his negligent misrepresentation claim "centers around Beaver Mountain's failure to disclose to him the negative customer reviews about . . . Beechel that Beaver Mountain's manager knew about and with which he had been personally involved" (ECF Doc. No. 17 at 18). In other words, the claim is based upon an alleged misrepresentation by omission. Sparago goes on to claim that the Amended Complaint satisfies FRCP 9 (b) based upon the heightened pleading standard as articulated by *Solutia Inc. v. FMC Corp.* , which states that "'where the alleged fraud is premised on an omission, a plaintiff must specify the person responsible for the failure to speak, the context of the omission, and the manner in which the omission misled the plaintiff.'" 456 F.Supp.2d 429, 449-450 (S.D.N.Y. 2006) (***purportedly* quoting** *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F.Supp.2d 282, 293 (S.D.N.Y.2000)). However, *Solutia Inc.* misquotes the heightened pleading standard articulated in

---

the Purchase Agreement fully disclosed Beaver Mountain's allegedly deceptive practice of disclaiming responsibility for the construction approximately two months before Sparago executed the ill-fated construction contract with Beechel. *See Sands v. Ticketmaster-New York, Inc.*, 207 AD2d 687, (1st Dept. 1994) (dismissing GBL § 349 claim where defendant's practice of charging allegedly "excessive" ticket fees were fully disclosed prior to the sale of tickets); *Lewis v. Hertz Corp.*, 181 AD2d 493, 493-494 (1st Dept. 1992) (affirming dismissal of GBL § 349 claim where car rental company's practices were fully disclosed prior to plaintiff's acceptance of rental car).

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, and several subsequent New York District Court cases. Under *Odyssey*, the actual FRCP 9 (b) pleading standard for an alleged fraud by omission requires that the complaint allege "(1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and **(4) what defendant obtained through the fraud.**" 85 F.Supp.2d at 293 (emphasis added) (citing *Weaver v Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997)); *accord In re Platinum-Beechwood Litig.*, 427 F.Supp.3d 395, 465 (S.D.N.Y. 2019); *Spinnato v Unity of Omaha Life Ins. Co.*, 322 F.Supp.3d 377, 398 (E.D.N.Y. 2018).

It is little wonder why Sparago chose to rely upon the misquoted standard in *Solutia Inc.* to support the adequacy of his negligent misrepresentation allegations: it completely omits the fourth requirement of *Odyssey*, namely, that the Amended Complaint must allege what Beaver Mountain obtained through the alleged fraud. It is beyond dispute that the Amended Complaint utterly lacks any allegation, express or implied, that Beaver Mountain gained anything by allegedly misrepresenting the quality of Beechel's work. Thus, it is submitted that Sparago's Third Cause of Action sounding in negligent misrepresentation must be dismissed, inasmuch as it clearly fails to satisfy the heightened pleading requirement of FRCP 9 (b).

2. In Any Event, the Disclaimers in the Purchase Agreement Make Sparago's Reliance Upon any Alleged Extracontractual Representations and/or Omissions Unreasonable

Though it has been established that Sparago's negligent misrepresentation claim should be dismissed for its failure to satisfy the heightened pleading standard under FRCP 9 (b) (*see* Point II.A.1., *supra*), his Third Cause of Action should also be dismissed due to the fact that the disclaimers in the Beaver Mountain Purchase Agreement render it legally impossible for him to establish his "reasonable reliance on [Beaver Mountain's] alleged misstatements or omissions"

regarding the quality of Beechel's construction work. *Coraud LLC v Kidville Franchise Co., LLC*, 109 F.Supp.3d 615, 619 (S.D.N.Y. 2015).

Sparago attempts to avoid this reality by arguing that he "fairly and reasonably relied on a false and misleading picture that [Beaver Mountain]'s omissions created about Robert Beechel before he disclaimed any reliance in the Purchase Agreement" (ECF Doc. No. 17 at 21). In other words, Sparago does not claim that the disclaimers in the Purchase Agreement are invalid or unenforceable. To the contrary, he explicitly *admits* that the disclaimers are capable of barring his reliance on Beaver Mountain's alleged representations and omissions about the quality of Beechel's work. Despite this admission, Sparago inexplicably maintains that his reliance on Beaver Mountain's alleged extracontractual misrepresentations and omissions is reasonable, and the disclaimers to which he agreed are essentially meaningless, because the alleged misrepresentations and omissions occurred before he executed the Agreement.

Unsurprisingly, Sparago cites no case law in support of this analysis, nor could he, inasmuch as the long established rule regarding contractual disclaimers is that "where a written contract contains a specific disclaimer of responsibility for extraneous representations, that is, a provision that the parties are not bound by or relying upon representations or omissions as to the specific matter . . . a plaintiff is precluded from later claiming fraud on the ground of a prior misrepresentation as to the specific matter." *Basis Yield Alpha Fund (Master) v Goldman Sachs Group, Inc.*, 115 A.D.3d 128, 137 (1st Dept. 2014); *see Coraud LLC v Kidville Franchise Co.*, LLC, 109 F.Supp.3d 615, 619 (S.D.N.Y. 2015); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-21 (N.Y. 1959). Thus, so long as the contract between the parties specifically disclaims a party's responsibility for the matter that is the subject of an alleged prior misrepresentation, it is unreasonable for a party to rely upon any such prior statement, regardless of when it occurred.

As relevant here, Paragraph 10 of the Purchase Agreement contains the following, specific disclaimers: (1) "THE PURCHASER ACKNOWLEDGES THAT THE SELLER IS A SUPPLIER OF MATERIALS ONLY"; (2) "The Seller assumes no responsibility for erection or proper installation of materials"; (3) "The Purchaser acknowledges that they are solely responsible for the selection of contractor(s)"; (4) "The Seller is not responsible for the quality of the contractor(s) work and the contractor(s) are not agent(s) or employee(s) of the Seller but is an independent contractor(s)." (ECF Doc. No. 10, Ex. 1 at p. 2 (capitalization in original)). As the foregoing makes clear, the disclaimers in the Purchase Agreement specifically address Sparago's misrepresentation/omission allegations, which are, in sum and substance, that Beaver Mountain "positively recommended Robert Beechel . . . even though Beaver Mountain knew at that point that other Beaver Mountain customers had complained about Robert Beechel's work" and "omitted the negative information [it] knew about Robert Beechel" (ECF Doc. No. 10 at ¶¶ 165-166). Therefore, even supposing, *arguendo*, that Sparago's allegations are true, they are extrinsic omissions and misrepresentations made prior to the execution of the Purchase Agreement, all of which are disclaimed by Sparago's express contractual acknowledgement he is "solely responsible for the selection of contractor(s)" and that Beaver Mountain assumes no responsibility for "erection or proper installation of materials" or "for the quality of the contractor(s) work".

Significantly, Sparago's own pleadings establish that he knew or should have known for approximately two months that he could not rely on any representation or omission that Beaver Mountain may or may not have made about Beechel,[2] and yet, he still chose to hire Beechel as his builder in February 2018 (*Id.* at ¶¶ 102, 168). Thus, it is submitted that the disclaimers in the Purchase Agreement make it a legal impossibility for Sparago to have reasonably relied on

[2] Sparago undisputedly signed the Purchase Agreement on December 16, 2017 (ECF Doc. No. 10, Ex. 1 at p. 1).

whatever statements that Beaver Mountain may or may not have made about Beechel and his work prior to the execution of the Agreement. *See Coraud LLC v. Kidville Franchise Co., LLC*, 109 F.Supp.3d at 619-20; *Danann Realty Corp. v. Harris*, 5 N.Y.2d at 321-322; *Natoli v NYC Partnership Hous. Dev. Fund Co., Inc.*, 103 A.D.3d 611, 612-13 (2d Dept. 2013).[3]

Furthermore, to the extent Sparago argues that the specific disclaimers are ineffective to defeat his negligent misrepresentation claim because certain customer complaints were "peculiarly within the [Beaver Mountain's] knowledge", *Warner Theatre Assoc. Ltd. Partnership v Metro. Life Ins. Co.*, 149 F.3d 134, 136 (2d. Cir. 1998), these allegations appear for the first time in Sparago's papers in opposition to the instant motion (*see* ECF Doc. No. 17 at 20). Nowhere in the Amended Complaint does Sparago allege that he was incapable of discovering "by the exercise of ordinary intelligence, the truth" about the quality Beechel's work on other homes, *Danann Realty Corp. v. Harris*, 5 N.Y.2d at 322; *see LBBW Luxemburg S.A. v Wells Fargo Sec. LLC*, 10 F.Supp.3d 504, 517 (SDNY 2014), or that he "would face high costs in determining the truth or falsity" of Beaver Mountain's statements about Beechel. *Warner Theatre Assoc. Ltd. Partnership v Metro. Life Ins. Co.*, 149 F.3d at 136. Thus, Sparago's attempt to raise the "peculiar knowledge" exception for the first time in his Memorandum of Law should be disregarded. *Fadem v. Ford Motor Co.*, 352 F.Supp.2d 501, 516 (S.D.N.Y. 2005).

In any event, the Amended Complaint belies Sparago's argument. For example, Sparago admits that he personally met with Beechel at least once prior to hiring him to construct the

---

[3] Beaver Mountain continues to rely upon its argument (ECF Doc. No. 16-3 at 13-15) that Sparago has also failed to establish the type of "special relationship of trust or confidence between the parties" necessary to make out a claim for negligent misrepresentation, *Banque Arabe et Internationale D'Investissement v. Maryland Nat. Bank*, 57 F.3d 146, 158 (2d Cir. 1995). In any event, the disclaimer in Paragraph 10 of the Purchase Agreement stating that Beaver Mountain is a supplied of materials only absolves Beaver Mountain of any duty that it may have had to impart correct information with regard to Beechel's capability as a contractor. *See Abu Dhabi Commercial Bank v Morgan Stanley & Co. Inc.*, 08 CIV. 7508 SAS, 2013 WL 837536, at *5 (S.D.N.Y. Mar. 6, 2013).

addition on his home (ECF Doc. No. 10 at ¶¶ 91, 160), but offers no explanation as to why he was unable to ask Beechel directly about the quality of his work. Additionally, the Amended Complaint points out specific examples of what Beaver Mountain allegedly knew about Beechel and failed to tell Sparago, namely, that "Beechel took three times longer to complete a job (over 12 months) that should have taken only four months" and that "Beaver Mountain knew that . . . Beechel's work for other customers was sub-par" (ECF Doc. No. 10 at ¶¶ 100, 162). This amounts to a tacit admission that Sparago had the independent means of discovering issues with Beechel's past work, and apparently did so. Accordingly, Sparago's cannot seriously argue that the "peculiar knowledge" exception applies here to save his negligent misrepresentation claim, which is otherwise fully disclaimed by the Purchase Agreement. *See Warner Theatre Assoc. Ltd. Partnership v Metro. Life Ins. Co.*, 149 F.3d at 136; *W. Intermodal Services, Ltd. v. Singamas Container Indus. Co., Ltd.*, 98 CIV. 8275 (RPP), 2000 WL 343780, at *3 (S.D.N.Y. Mar. 31, 2000). The Third Cause of Action for negligent misrepresentation should be dismissed.

**B. Negligence**

Sparago's Second Cause of Action sounding in common law negligence fails for the same reasons that his Third Cause of Action sounding in negligent misrepresentation fails because they are, essentially, the same claim stated in two different ways (*see* ECF Doc. No. 16-3 at 19-21). Despite this, Sparago advances the argument that his negligence claim is somehow different from his negligent misrepresentation claim because the Amended Complaint purportedly "establishes that Beaver Mountain was the project manager for Mr. Sparago's log cabin project, which precipitated Beaver Mountain's duty as the project manager to perform properly in that role", and that Beaver Mountain breached that duty by "recommending a sub-par contractor to Mr. Sparago when it should have known better" (ECF Doc. No. 17 at 23-24). It does not.

Irrespective of how he attempts to frame it, Sparago's negligence claim is, at bottom, a claim based on negligent advice and/or statements. "In ordinary commercial contexts," like the one that exists here, "liability does not attach as a matter of course for merely negligent statements; rather, it is imposed 'only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.'" *JP Morgan Chase Bank v Winnick*, 350 F.Supp.2d 393, 400 (S.D.N.Y. 2004) (quoting *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996)). In other words, a negligence claim alleging reliance on poor advice or recommendations is tantamount to a negligent misrepresentation claim, and is treated as such by the courts. *See e.g. Naughright v. Weiss*, 826 F.Supp.2d 676, 688-690 (S.D.N.Y. 2011); *JP Morgan Chase Bank v Winnick*, 350 F.Supp.2d at 400-404; *Dorsey Products Corp. v U.S. Rubber Co.*, 21 A.D.2d 866, 867 (1st Dept. 1964). Thus, it is submitted that because Sparago's negligent misrepresentation claim must be dismissed (*see* Point II.A., *supra*), his common law negligence claim must also be dismissed, inasmuch as it is nothing more than a repackaged negligent misrepresentation claim.[4]

**CONCLUSION**

For all of the foregoing reasons, Beaver Mountain respectfully requests an order dismissing the Amended Complaint, together with such other and further relief as the Court deems just and proper.

[4] In any event, Sparago's negligence claim is also barred because "[u]nder New York law, unambiguous contractual clauses absolving a party for liability from its own ordinary negligence . . . are enforceable." *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 CIV. 8688 (WHP), 2002 WL 362794, at *15 (S.D.N.Y. Mar. 6, 2002) (citations omitted"). Inasmuch as Sparago "alleges mere negligence . . . the [Purchase Agreement] provisions operate to bar [his] claims as a matter of law." *Am. Tissue, Inc. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 351 F. Supp. 2d 79, 99 (S.D.N.Y. 2004); *see* ECF Doc. No. 16-3 at 18-19.

Dated: July 31, 2020

Respectfully submitted,

S/Paul J. Sweeney
Paul J. Sweeney, Esq.
Federal Bar Roll No. PS0167
COUGHLIN & GERHART, LLP
*Attorneys for Defendant*
*Beaver Mountain Log Homes, Inc.*
99 Corporate Drive
Binghamton, New York 13904
PO Box 2039
Binghamton, New York 13902-2039
Telephone: (607) 723-9511
Facsimile: (607) 723-1530
psweeney@cglawoffices.com