UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GARY SPARAGO,

Plaintiff,

v.

BEAVER MOUNTAIN LOG HOMES, INC.,

Defendant.

No. 20-CV-276 (KMK)

OPINION AND ORDER

Appearances:

Brian Howard Brick, Esq.
Brick Law PLLC
White Plains, NY
*Counsel for Plaintiff Gary Sparago*

Paul Jude Sweeney, Esq.
Coughlin & Gerhart, LLP
Binghamton, NY
*Counsel for Defendant Beaver Mountain Log Homes, Inc.*

KENNETH M. KARAS, District Judge:

Gary Sparago ("Plaintiff") brings this Action, pursuant to New York General Business Law ("GBL") § 349, against Beaver Mountain Log Homes, Inc. ("Beaver Mountain" or "Defendant") for deceptive consumer practices. (*See* Am. Compl. (Dkt. No. 10).) In his Amended Complaint, Plaintiff alleges that Defendant assured Plaintiff that it would manage and facilitate the construction of an addition to his property located at 134 Seeman Road, Neversink, New York ("the Premises") but fundamentally changed its status to a "supplier of materials only" through a late-stage Purchase Agreement. (Pl.'s Mem. of Law in Opp'n to Mot. To Dismiss ("Pl.'s Mem.") 1 (Dkt. No. 17).)

Before the Court is Defendant's Motion To Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Def.'s Mot. To Dismiss ("Motion") (Dkt. No. 16).) For the following reasons, Defendant's Motion is denied.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true for the purpose of resolving the instant Motion.

Defendant is a company that assists in the process of planning and building a Beaver Mountain log cabin home. (Am. Compl. ¶ 2.) On its website, in its printed promotional materials and website, Defendant states "[w]e're with you every step of the way." (*Id.* ¶¶ 1–2.) This is one of the company's "premier catch-phrases." (*Id.*) On Defendant's website under the "Our Design/Build Process" tab it describes that

> Here at Beaver Mountain, we wake up every day and work tirelessly to make sure our customers enjoy the finest possible home building experience – *before, during, and after* their projects are completed. For us, it's this simple: your quality of life is our highest priority . . . . [W]e leverage our expertise and experience so you can involve yourself in the process as much or as little as you want, *knowing we always have your back.* We deliver unparalleled service during the design and building phases, and *reliable support after you move in.*

(*Id.* ¶¶ 3–4 (emphases added).) Defendant further states that it will "help [the customer] design & build" a dream log cabin home. (*Id.* ¶ 4.) According to Plaintiff, Defendant "lures its customers with promises that Beaver Mountain will take care of everything in the design and building process" and that customers can "relax while Beaver Mountain leverages its expertise to produce log cabin homes that they can enjoy – without adding to the burdens of their already-busy lives." (*Id.* ¶¶ 5, 121.) However, Defendant's "warming message" that the company will be with customer "every step of the way" is "apparently false." (*Id.* ¶ 6.) Beaver Mountain

"hand-holds its customers through the planning and design process" and in "selecting a contractor" but once a contractor is selected, Defendant requires customers to sign a Purchase Agreement absolving it from any issues that follow during construction. (*Id.* ¶ 7.) The Purchase Agreement is given to customers "many steps into the ten-step overall process" described on Defendant's website. As Plaintiff explains it, Beaver Mountain "quietly tries to change the status between Beaver Mountain and its customers." (*Id.* ¶¶ 7, 40–50.) Thus, while Defendant advertises that it will "deliver unparalleled service during the design *and building phases*," (*id.* ¶ 41 (emphasis added)), the Purchase Agreement includes the following in Paragraph 10:

> THE PURCHASER ACKNOWLEDGES THAT THE SELLER IS A SUPPLIER OF MATERIALS ONLY. All responsibility of materials from the Seller ends on delivery in good condition of materials listed in this Purchase Agreement . . . . The Seller assumes no responsibility for erection or proper installation of materials . . . . The Purchaser also acknowledges that they are solely responsible for the selection of the contractor(s). The Seller is not responsible for the quality of the contractor(s) work and the contractor(s) are not agent(s) or employee(s) of the Seller but is an independent contractor(s).

(*Id.* Ex. 1.) And, while Defendant prides itself on "transparency, honesty, and communication . . . always," (*id.* ¶ 10), the Purchase Agreement contains provisions aimed to eliminate Defendant's responsibility beyond supplying materials. (*Id.*) In particular, Plaintiff alleges that if problems arise with the contractor selected to build the log cabin home, Beaver Mountain makes like a tree and leaves, using Paragraph 10 to release itself of liability. (*Id.* ¶ 11.) Defendant insists that "Section 10 of the Purchase Agreement disclaims any role other than as a supplier of materials and makes clear that [Plaintiff] is responsible for the selection of his builder." (*Id.*) Yet, according to Plaintiff, through this provision, Beaver Mountain has engaged in a classic "bait and switch" where it assures customers that the company will be there throughout the process, only to dramatically change its role through the Purchase Agreement. (*Id.* ¶¶ 13, 63–66.) Plaintiff alleges that Defendant engaged in deceptive practices through this

language buried on the reverse side of the Purchase Agreement. (*Id.* ¶ 14.) In addition to the deceptive practices with respect to the Purchase Agreement, Plaintiff alleges that Defendant engaged in specific acts of negligence and negligent misrepresentations related to its statements and omissions to Plaintiff during the builder selection process. (*Id.* ¶ 15.)

In 2017, Defendant coordinated the bidding process for Plaintiff to select a project builder for the construction of the addition to the Premises. (*Id.* ¶ 16.) Defendant recommended Robert Beechel from R&L Builders for Plaintiff's project. (*Id.*) Defendant boasts that with "decades of experience with [b]uilders in your area" that customers can "[r]ely on us to schedule introductions, meet with [the customer] and potential [b]uilders . . . ." (*Id.* ¶¶ 43, 52–53, 55.) However, according to Plaintiff, Defendant and its employees knew that other customers complained about the work of Beechel and R&L Builders but did not share this information with Plaintiff. In particular, Defendant knew that Beechel took three times longer than was expected to complete a job for another customer. (*Id.* ¶ 100.) Defendant also knew that Beechel's prior work for other customers was sub-par but did not share this information with Plaintiff, (*id.*), even though Plaintiff specifically asked if there were past issues or concerns about Beechel when he was considering builders during the selection process, (*id.* ¶ 17). Based on Defendant's positive reviews of Beechel and Defendant's omission of material information concerning previous complaints that other customers had lodged against Beechel, Plaintiff cut a deal with him and R&L Builders in early 2018 to build the addition to the Premises. (*Id.* ¶¶ 18, 78, 88–95.) Unsurprisingly, Plaintiff claims that if he knew about the delays and complaints about Beechel, he would have selected a different builder. (*Id.* ¶¶ 100–101, 119.)

Beechel and R&L Builders "completely botched the construction work" at the Premises. (*Id.* ¶ 19.) In addition to several other issues, Beechel improperly graded the soil around the

Premises, improperly installed footing drains, improperly installed stone for draining which led to pipe and drainage issues, failed to tie the original foundation to the foundation for the addition, failed to seal the concrete foundation walls, improperly installed the concrete support columns, installed the wrong flooring material, and installed the gutters backwards. (*Id.* ¶ 105.) Defendant also shipped to the Premises a large quantity of caulking specifically formulated for use in log cabins. This caulking is necessary to prevent moisture damage from developing in the joints between the log siding. Beechel failed to use the majority of caulking Defendant sent for the Premises so the addition will be exposed to future mold and rot problems and which cannot be fixed. (*Id.* ¶ 106.) Furthermore, Beechel and R&L Builders did not have insurance for defective construction work, even though Plaintiff was provided with a Certificate of Liability Insurance which gave the appearance that Beechel and R&L Builders were sufficiently insured. (*Id.* ¶ 115.)

Plaintiff paid approximately $170,000 to Beechel and R&L Builders for the construction of the addition to the Premises and spent at least an additional $115,000 for other professionals and contractors to fix Beechel's sub-par work. Plaintiff anticipates the need to spend an additional $15,000 to fix the remaining issues stemming from the defective construction. (*Id.* ¶¶ 20, 103, 112–113.)

B. Procedural Background

Plaintiff initiated this Action on January 11, 2020. (Compl. (Dkt. No 1).) On March 13, 2020, Defendant filed a letter requesting permission to file a Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Letter from Def. to Court (March 13, 2020) (Dkt. No. 7).) Plaintiff filed a letter in response requesting the opportunity to file an amended complaint. (Letter from Pl. to Court (March 20, 2020) (Dkt. No. 8).) The Court granted Plaintiff's request

to file an amended complaint. (Dkt. No. 9). On April 3, 2020, Plaintiff filed the Amended Complaint. (Am. Compl.) On June 11, 2020, Defendant filed a Motion To Dismiss the Amended Complaint. (Motion; Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 17).) On July 11, 2020, Plaintiff filed an Opposition. (Pl.'s Mem.) On July 31, 2020, Defendant filed a Reply. (Def.'s Reply Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s Reply") (Dkt. No. 19).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will

. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering Defendant's Motion To Dismiss, the Court is required to "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted). Rule 8 does not unlock the doors of discovery for "a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79 (2009).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted).

B. Analysis

1. New York General Business Law § 349

Plaintiff alleges a violation of GBL § 349, which prohibits certain deceptive business practices. *See* N.Y. Gen. Bus. Law § 349. To state a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)). A "deceptive act or practice" is defined as a representation or omission "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 604 (N.Y. 1999) (citation omitted).

In this Action, Plaintiff alleges three causes of action. First, Plaintiff claims that Defendant violated GBL § 349 through its deceptive business practices. Plaintiff contends that he was the victim of a classic "bait and switch" in which Defendant fundamentally changed its role and liability as it related to the construction of Plaintiff's Beaver Mountain addition through a late-stage Purchase Agreement which shifted the company's role from a project manager to that of a supplier only. (Am. Compl. ¶¶ 125–142.) The Court finds that Plaintiff has plausibly alleged a violation of GBL § 349. First, Defendant undoubtably engaged in "consumer-oriented conduct" by working with its customers. Courts in the Second Circuit construe the consumer-oriented requirement liberally. *See New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002). The requirement "may be satisfied by showing that the conduct at issue 'potentially

affect[s] similarly situated consumers.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (alteration in original) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995)). "A defendant engages in 'consumer-oriented' activity if [the company's] actions cause any 'consumer injury or harm to the public interest.'" *Feldman*, 210 F.Supp.2d at 301 (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir.1995)). Here, Plaintiff has plausibly alleged that Defendant engaged in consumer-oriented activity that caused Plaintiff injury. Specifically, Plaintiff describes in the Amended Complaint that Defendant managed and facilitated the construction of Plaintiff's Beaver Mountain log cabin home and supplied the accompanying material and Plaintiff suffered injury because of the sub-par construction work performed by the contractor recommended by Defendant. *Karlin v. IVF Am., Inc.*, 712 N.E.2d 662, 665 (N.Y. 1999) (footnote omitted) (GBL § 349 on its "face appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad.") (collecting cases); *see also Sheth v. N.Y. Life Ins. Co.*, 709 N.Y.S.2d 74, 75 (App. Div. 2000) ("[GBL § 349] is intended to protect consumers, that is, those who purchase goods and services for personal, family or household use.") (quotation marks omitted).

Second, Plaintiff has pled sufficient facts to plausibly allege that Defendant's conduct was potentially "materially misleading" given that in its online and printed materials Defendant assures customers that it will manage a customer's log cabin project from start-to-finish. (Am. Compl. ¶ 25.) For example, Defendant repeatedly claims that it will be with customers "every step of the way" and that it "deliver[s] unparalleled *service during the design and building phases, and reliable support after [the customer] move[s] in*." (*Id.* ¶¶ 3–4 (emphasis added).) There are other instances on Defendant's website and in its promotional materials where Defendant represents that it will support the customer throughout the entire process of the

construction of a Beaver Mountain log cabin home, not just by serving as a supplier of materials. (*Id.* ¶¶ 1, 4, 26–27, 56.) In the Project Timeline provided by Defendant to Plaintiff there is a detailed breakdown which includes conduct such as approving home design, making builder selections, selecting financing, reviewing building schedule, ordering the home, signing the Purchase Agreement, outlining the production process, noting the start of construction and several other logistical details about the project. (*Id.* Ex. 2.) This Project Timeline could lead a reasonable consumer to believe that Defendant was more than merely a supplier of materials. This is further bolstered by Defendant's interactions with Plaintiff, in which Beaver Mountain managed the builder selection process. On top of that, Defendant also facilitated the meeting with Beechel and R&L Builders when issues first presented themselves during construction of Plaintiff's log cabin home. (*Id.* ¶¶ 28–30.) Defendant's employees even have titles such as "Project Coordinator" and "Building Consultant" which could lead any reasonable consumer to believe that the company was serving a role well beyond that of a supplier. (*Id.* ¶ 72; Pl.'s Mem. at 12.) In addition, as Plaintiff points out, nowhere on Defendant's website or in its promotional materials does Beaver Mountain describe itself as a supplier only; instead, it represents the opposite: that Defendant will play a key role in the construction of the log cabin home "before, during, and after" the project is completed. (Am. Compl. ¶¶ 5, 56–57, 77, 81, 87, 130.) As Plaintiff emphasizes, the only time Defendant discloses that it is a supplier of materials is in a late-stage Purchase Agreement when a customer would be at least halfway through the process. (*Id.* ¶¶ 7–9, 68–71, 79, 135–39.) At this point, the customer would have already designed a Beaver Mountain log cabin home and paid substantial amounts of money toward the construction. Thus, Plaintiff has plausibly pled that Defendant conducted itself as much more

than a mere supplier of materials and instead a project manager of the construction of Plaintiff's log cabin addition to the Premises.

Defendant counters by emphasizing the terms of the Purchase Agreement. Specifically, Defendant attempts to point to Paragraph 10 of the Purchase Agreement which it characterizes as "full disclosure" that it is a supplier only. (*See* Def.'s Mem. at 5–8.) But the contract is only part of what Plaintiff alleges is deceptive. The lynchpin of Plaintiff's argument is that the deceptive *practice* of introducing that contract so late in the process forms the basis of his GBL § 349 claim. (Pl.'s Mem. at 2, 5–11.) Moreover, the type of disclaimer Defendant relies upon does not necessarily undermine the viability of a GBL § 349 claim, as "[l]iability may be found under [§] 349 . . . even in the presence of an explicit disclaimer like the one present here." *Koch v. Greenberg*, No. 07-CV-9600, 2008 WL 4450273, at *4 (S.D.N.Y. Sept. 30, 2008); *see also Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1197 (N.Y. 2002) (holding that disclaimers "do not establish a defense as a matter of law").

Finally, Plaintiff has alleged the requisite injury to state a plausible GBL § 349 claim. Plaintiff has sufficiently alleged that Defendant's conduct resulted in an injury which is the substantial sum Plaintiff had to spend to repair and redo the sub-par construction work performed by Beechel and R&L Builders. Specifically, Plaintiff's injury was the expenditure of $115,000 to address the construction issues and the anticipation of spending at least $15,000 more on his log cabin addition. (Am. Compl. ¶¶ 20, 103, 112–113.) As a result of Paragraph 10 of the Purchase Agreement, Defendant disclaims liability, so Plaintiff is unable to recover the cost of his injuries from Defendant.

The pleadings set forth are sufficient at this stage for the GBL § 349 claim to proceed and therefore, Defendant's Motion To Dismiss that claim is denied.

2. Negligence

Plaintiff brings a second cause of action of negligence. Under New York law, to succeed on a negligence claim, a plaintiff must prove: (1) that the defendant owed a duty of care to the plaintiff; (2) a breach of this duty of care; and (3) injury to the plaintiff as a proximate cause of the defendant's breach of duty. *See King v. Crossland Sav. Bank*, 111 F.3d 251, 255 (2d Cir. 1997) ("New York courts require a plaintiff to show: (1) that the defendant owed the plaintiff a cognizable duty of care, (2) that the defendant breached that duty, and (3) that the plaintiff suffered damages as a proximate result of that breach."). In New York, the existence of a duty is a "legal, policy-laden declaration reserved for [j]udges." *Palka v. Servicemaster Mgmt. Servs. Corp.*, 634 N.E.2d 189, 192 (N.Y. 1994). Plaintiff must show that a defendant owed not merely a general duty to society but a specific duty to the particular plaintiff, for "[w]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *Lauer v. City of New York*, 733 N.E.2d 184, 187 (N.Y. 2000). Courts traditionally "fix the duty point by balancing factors, including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." *Palka*, 634 N.E.2d at 586.

For negligence claims, without a defined relationship or other special circumstances, "duties are not owed to the public at large or to those outside the limited class of people who, it is reasonable to believe, are entitled to expect the actor's due care to them." *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 468 F. Supp. 2d 508, 531 (S.D.N.Y. 2006) (citing *Waters v. N.Y.C. Hous. Auth.*, 505 N.E.2d 922, 924 (N.Y. 1987)), *aff'd sub nom. Aegis Ins. Servs., Inc. v. 7 World*

*Trade Co., L.P.*, 737 F.3d 166 (2d Cir. 2013). However, district courts have found liability in circumstances where a "special relationship" exists directly between the plaintiff and defendant that required a duty of care, like privity of contract, or a relationship sufficiently approaching privity. *Gen. Star Indem. Co. v. Platinum Indem. Ltd.*, No. 00-CV-4960, 2002 WL 31159106 at *3 (S.D.N.Y. Sept. 27, 2002). It is well-established that under New York law that a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated. *See Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt., LLC*, 692 F.3d 42, 58 (2d Cir. 2012). The legal duty must therefore "spring from circumstances extraneous to, and not constituting elements of, the contract." *Id.* (quoting *Clark-Fitzpatrick v. Long Island R.R. Co.*, 516 N.E.2d 190, 194 (N.Y. 1987)). For example, "[a] legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship." *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992). "Where an independent tort duty is present, a plaintiff may maintain both tort and contract claims arising out of the same allegedly wrongful conduct." *Bayerische*, 692 F.3d at 58. The existence of duty is a question of law; however, "once the nature of the duty has been determined as a matter of law, whether a particular defendant owes a duty to a particular plaintiff is a question of fact." *Kimmell v. Schaefer*, 675 N.E.2d 450, 453 (N.Y. 1996). The Second Circuit has found duties imposed by law arising from the circumstances surrounding the forming of a contract and also based on the nature of the contracted-for services. In *Bayerische*, for example, the Second Circuit concluded that a complaint alleged a duty that was extraneous to the parties' contract because the plaintiffs alleged that they detrimentally relied on the defendant's representations as to the manner in which it would perform the contractual duties. 692 F.3d at 59. The Second Circuit explained that "[t]his legal duty, though assessed largely on the standard of care and the other obligations

set forth in the contract, would arise out of the independent characteristics of the relationship between" the parties. *Id.* (italics omitted).

Plaintiff contends that the negligence claim is based on Defendant's affirmative conduct in recommending Beechel and R&L Builders when the company knew he was problematic as a contractor. (Pl.'s Mem. at 23–24.) The negligence claim is supported by the premise alleged in the Amended Complaint that Defendant functionally served as the project manager for Plaintiff's log cabin addition, which the Court finds is a "relationship sufficiently approaching privity." *Gen. Star Indem. Co.*, 2002 WL 31159106 at *3. This privity-like relationship precipitated Beaver Mountain's duty of care as the project manager to perform properly in that role. (*See* Sweeney Decl. Ex. A ¶ 146.) Plaintiff argues that as a matter of law, Defendant owed a duty of care to Plaintiff to perform the role of project manager satisfactorily. Instead, by recommending a sub-par contractor to Plaintiff, Defendant breached its duty of care and proximately caused Plaintiff to suffer injury when the contractor damaged his log cabin home and surrounding property. (Am. Compl. ¶¶ 143–153.)

Plaintiff has adequately alleged that Defendant owed him a duty of care in the process to construct the Beaver Mountain log cabin addition to the Premises. In balancing the factors courts consider in evaluating whether a duty of care is owed to a plaintiff, Plaintiff would reasonably expect that when hiring and paying a company to help build a log cabin home, the company would owe Plaintiff a duty of care in the construction of the log cabin addition. Claims sounding in negligence derive duties from various relationships. For example, "[t]hose who perform work, or deliver services or products, pursuant to a contractual or other commercial relationship owe duties of care and proper performance to those entitled to receive the benefit of their work or services or products." *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 468 F.

Supp. 2d at 531; *see also Jones v. Halstead Mgmt. Co.*, 81 F. Supp. 3d 324, 337 (S.D.N.Y. 2015) (noting that where a party held itself out as an expert and contracted to conduct services that implicated legal interests, the law imposed an extraneous duty and "the appropriate standard of care in such cases is 'the care and caution proper to [their] calling.'" (alteration in original) (quoting *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 603 (2d Cir. 1989)). "Courts have generally allowed claims where the negligent performance of a contract causes abrupt damage to the plaintiff's person or property." *BDG Gotham Residential, LLC v. W. Waterproofing Co.*, No. 19-CV-6386, 2020 WL 6825679, at *3 (S.D.N.Y. Nov. 20, 2020); *see, e.g.*, *Trustees of Columbia Univ. in City of N.Y. v. Gwathmey Siegel & Assocs. Architects*, 601 N.Y.S.2d 116, 118–19 (App. Div. 1993) (allowing negligence claim against construction contractor where shoddy construction caused a portion of the building's facade to collapse).

Here, Plaintiff has alleged sufficient facts to plausibly state a claim that Defendant owed him a duty of care in the project management of the construction of his Beaver Mountain log cabin home, that Defendant breached that duty through its affirmative conduct in recommending Beechel and R&L Builders despite knowing that there were issues with other clients regarding his construction, and that Plaintiff suffered damages in having to hire other contractors to fix Beechel and R&L Builders' construction work which was a proximate result of the breach. As such, the Motion is denied with respect to this claim.

3. Negligent Misrepresentation

Finally, Plaintiff alleges a third cause of action of negligent misrepresentation. Under New York law, "[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3)

reasonable reliance on the information." *Woori Bank v. Citigroup Inc.*, No. 12-CV-3868, 2013 WL 1235648, at *5 (S.D.N.Y. Mar. 27, 2013) (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011)); *see also J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007). "[U]nder New York law, a plaintiff may recover for negligent misrepresentation only where the defendant owes [him or] her a fiduciary duty." *Turner v. Temptu Inc.*, No. 11-CV-4144, 2013 WL 4083234, at *8 (S.D.N.Y. Aug. 13, 2013) (citation omitted); *see also Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992) (same); *White v. Guarente*, 372 N.E.2d 315, 319 (N.Y. 1977) (noting that a negligent statement "is not actionable unless expressed directly, with knowledge or notice that it will be acted upon, to one whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all."). The assessment of whether such a fiduciary relationship exists is normally fact-driven. *See Murphy v. Kuhn*, 682 N.E.2d 972, 975 (N.Y. 1997) ("[T]he issue of whether [duties] should be recognized and given legal effect is governed by the particular relationship between the parties and is best determined on a case-by-case basis."). Under the "duty" element of the analysis, "New York [law] strictly limits negligent misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993) (quoting *Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson*, 539 N.E.2d 91, 94 (N.Y. 1989)); *see also J.A.O. Acquisition Corp.*, 863 N.E.2d at 587 ("A claim for negligent misrepresentation requires the plaintiff to demonstrate . . . the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff."). The Second Circuit has noted that although some of its prior decisions "state that a negligent misrepresentation claim will not lie unless the parties share a fiduciary or otherwise

'special' relationship, [those decisions] cannot be read to preclude such a cause of action brought on grounds of privity or near-privity." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 n.15 (2d Cir. 2005). "Courts have reconciled the discrepancy in the caselaw by recognizing a fiduciary duty as one, but not the exclusive, basis for a negligent misrepresentation claim." *Id.* (citing *In re Leslie Fay Cos.*, 918 F. Supp. 749, 769 (S.D.N.Y. 1996) ("A fiduciary relationship may be a sufficient condition to support a claim for negligent misrepresentation absent the existence of actual privity; however, it is not a necessary condition . . . .")). A relationship is considered "so close as to approach that of privity" if: (1) "the defendant makes a statement with the awareness that the statement was to be used for a particular purpose"; (2) "a known party or parties rely on this statement in furtherance of that purpose"; and (3) "there is some conduct by the defendant linking it to the party or parties and evincing [the] defendant's understanding of their reliance." *Id.* at 584 (citation omitted).

As the Parties point out, the Second Circuit has not decided whether a claim for negligent misrepresentation must also comply with the pleading requirement of Federal Rule of Civil Procedure 9(b), but district courts have routinely applied Rule 9(b) to these fraud claims. *See, e.g., BNP Paribas Mortg. Corp. v. Bank of America, N.A.*, 949 F. Supp. 2d 486, 508 (S.D.N.Y. 2013); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 200 (S.D.N.Y. 2011) (noting that the Second Circuit has expressly left undecided whether Rule 9(b) applies to negligent misrepresentation claims). Because negligent misrepresentation is a type of fraud, district courts have analyzed these claims under a heightened pleading standard under Rule 9(b). *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) (stating that Rule 9(b) "may or may not apply to a state law claim for negligent misrepresentation," but that district courts have held that 9(b) does apply to negligent

misrepresentation); *Naughright v. Weiss*, 826 F. Supp. 2d 676, 688 (S.D.N.Y. 2011) (noting that negligent misrepresentation is subject to Rule 9(b)'s heightened pleading standard). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened pleading standard requires that Plaintiff "detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Henneberry v. Sumitomo Corp. of Am.*, 532 F. Supp. 2d 523, 539–40 (S.D.N.Y. 2007). The Court does not go against this grain, but reads the specific requirements of Rule 9(b) together with the general requirements of Federal Rule of Civil Procedure 8(a), which provides the complaint need only set forth a "short and plain statement" of the claims for relief. *Felton v. Walston & Co.*, 508 F.2d 577, 580 n.5, 581 (2d Cir. 1974) ("[I]n applying rule 9(b) we must not lose sight of the fact that it must be reconciled with [R]ule 8[,] which requires a short and concise statement of claims."); *Boritzer v. Calloway*, No. 10-CV-6264, 2013 WL 311013, at *10 (S.D.N.Y. Jan. 24, 2013) ("Rule 9(b) must be read in harmony with Rule 8(a), which requires only a short and plain statement of the facts and allegations, . . . even in the context of Rule 8, *Twombly* and *Iqbal* require plausibility premised on some reasonable specificity.").)

Plaintiff alleges that Defendant mispresented the reputation of the Beechel and R&L Builders and that Plaintiff relied on Defendant's misrepresentations regarding his builder selection. (Am. Compl. ¶¶ 154–171.) In addition, Plaintiff alleges that Defendant also deceived him during the building phase of the project by providing status updates that his log cabin addition looked "great" and that the project was running smoothly. (*Id.* ¶¶ 32, 125–142.) The Court finds that Plaintiff has sufficiently alleged the existence of a special or privity-like

relationship between Defendant and Plaintiff. Based on the facts alleged by Plaintiff, the Defendant essentially stood in the role of project manager for the building of his log cabin home. Defendant made statements to Plaintiff that were to be "used for a particular purpose" during the builder selection process, namely that Beechel and R&L Builders were reputable and skilled contractors, despite Defendant knowing information that would show otherwise. *Aetna*, 404 F.3d at 584. It was known to Defendant that Plaintiff would "rely on this statement" in selecting a contractor. *Id.* According to Plaintiff, Defendant understood that Plaintiff would rely on Defendant's information and recommendation. (Am. Compl. ¶¶ 33, 95, 97, 102, 147, 159, 168.) Moreover, Plaintiff does not merely allege misrepresentations about Beechel and R&L Builders, but bolsters its negligent misrepresentation claim by highlighting that Defendant touted its expertise in the building selection process and Plaintiff relied on these statements and the company's expertise by hiring Defendant to lead the process in selecting a contractor for his addition. Plaintiff specifically describes in the Amended Complaint that Defendant's promotional materials, website, and employees represent that the company offers "knowledge and expertise" to "put its customers' minds at ease by assuring them it will find reputable builders for their construction projects." (*Id.* ¶¶ 96, 128.) These allegations are sufficient to plead reliance. *See Abu Dhabi Com. Bank v. Morgan Stanley & Co.*, 910 F. Supp. 2d 543, 547 n.17 (S.D.N.Y. 2012) ("The very nature of a privity-like 'special relationship' is that it entails a duty to provide accurate information."); *see also Mandarin Trading Ltd.*, 944 N.E.2d at 1109 (requiring "the existence of a special or privity-like relationship imposing a duty on the

defendant to impart correct information to the plaintiff").[1,2] Accordingly, Plaintiff's negligent misrepresentation claim may proceed.

## III. Conclusion

For the foregoing reasons, Defendant's Motion To Dismiss is denied. The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 16). The Court will hold a Status Conference on April 9, 2021 at 10:00am.

SO ORDERED.

Dated: March 15, 2021
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

[1] Furthermore, Plaintiff argues that he had no practical way of knowing about other Beaver Mountain customers who complained about Beechel other than by directly asking Defendant about such information. (Pl.'s Mem. at 20.) Additionally, there were no publicly available resources for Plaintiff to discover information about Beechel and R&L Builders – but even if there had been Plaintiff reasonably relied on Defendant's misrepresentations and expertise. (*Id.*)

[2] Defendant's sequencing argument is barking up the wrong tree, because Plaintiff alleges that he relied on Defendant's misrepresentation of Beechel and R&L Builders *prior* to executing the Purchase Agreement, even if Plaintiff did not complete hiring him until after the document was signed. (Am. Compl. ¶¶ 7, 12, 56, 69–71, 135, 139.)